NOT FOR PUBLICATION

# United States Court of Appeals
## For the First Circuit

84-1863

CRAIG V. McDONOUGH,

Plaintiff, Appellant,

v.

TRUSTEES OF THE UNIVERSITY SYSTEM OF
NEW HAMPSHIRE, ET AL.

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Edward S. Northrop,* Senior District Judge]

---

Before

Bownes, Breyer and Torruella,

Circuit Judges.

---

Craig V. McDonough on brief pro se.
Joseph A. Millimet and Devine, Millimet, Stahl & Branch
brief for appellees.

---

June 1, 1987

---

Of the District of Maryland, sitting by designation.

<u>Per Curiam</u>. The appellant, Craig V. McDonough, was a nontenured associate professor of economics at Keene State College in New Hampshire beginning in the fall of 1979. His contract to teach was not renewed past the 1981-1982 academic year. McDonough alleged that the nonrenewal violated various of his constitutional rights, most notably the First Amendment, because, according to McDonough, it occurred in retaliation for expression of his political beliefs. He sued trustees of the University System of New Hampshire, whose scope of jurisdiction included Keene State College, and a number of Keene State College administrators. A jury found in favor of all the defendants and against McDonough. McDonough has appealed. We affirm.

An aspect of this case was before this court previously when we affirmed the district court's denial of McDonough's motion for a preliminary injunction, which sought to prohibit the defendants from terminating his employment by nonreappointment. The sequence of most of the pertinent events leading up to McDonough's nonrenewal and the parties' disputed interpretations of those events are set out in some detail in our prior opinion, <u>McDonough v. Trustees of University System of N.H.</u>, 704 F.2d 780, 781-82 (1st Cir. 1983). We will not reiterate the factual background of this case here but will refer to it only as needed to discuss the four issues that McDonough raises on appeal and which we will discuss seriatim.

## I. Jury Charge

McDonough argues that the district court should have instructed the jury on standards of professional conduct to which he should be held and that the failure to do so improperly left the determination of these standards to the "uninstructed discretion of the jury." McDonough has not indicated to this court either that he submitted a proposed instruction on this issue or that he objected to the failure of the district court to so instruct sua sponte. Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.") Although McDonough points to his trial counsel's objection to the court's instruction based on Pickering v. Board of Education, 391 U.S. 563 (1968), that objection was not based on any alleged absence of adequate guidelines on standards of professional conduct and therefore is unavailing to McDonough's argument on appeal.

In any event, we conclude that the standards of professional conduct with which this case was concerned were either (a) that which ordinary reasonable people would understand to exist in any employment situation, for example, mutual respect and trust, and for which we find no error in any alleged lack of a separate and specific instruction and/or (b) sufficiently set out during the course of the charge (Transcript

-3-

of Charge of the Court at pp. 37-44), in which we find no error. We are not, therefore, persuaded that the jury based its verdict on "uninstructed discretion."

McDonough also argues that the district court erred in instructing that "[p]laintiff contends that the inference to be drawn from these facts is that the sole reason for the nonrenewal of his contract was his exercise of First Amendment Rights" (emphasis added). McDonough does not contend that this statement is an inaccurate characterization of the theory of his lawsuit. The statement, in fact, aptly expresses the essence of McDonough's claim against the defendants. McDonough argues instead that the language "the sole reason for" is substantially at variance with the teaching of Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274 (1977). First, we are not persuaded that any error of the district court occurred when (a) the district court accurately depicted the claimant's theory of the lawsuit, (b) no contemporaneous objection was raised below, and (c) on appeal, the claimant contends that his theory varies from applicable law. Second, in any event, the statement is completely consistent with the Mt. Healthy case. In Mt. Healthy, the Court ruled that the fact that constitutionally-protected conduct played a substantial part in a decision not to renew the contract of a nontenured teacher would not necessarily amount to a constitutional violation justifying remedial action, but rather the employer is permitted to attempt to show that

-4-

it would have reached the same decision even in the absence of the protected conduct. <u>Mt. Healthy City Board of Ed. v. Doyle</u>, 429 U.S. at 285-86. McDonough's claim that his expression of his political beliefs was the sole reason for the defendants' decision not to renew is merely an assertion, consistent with the <u>Mt. Healthy</u> decision, that the defendants would not have reached the decision not to renew in the absence of his allegedly protected conduct.

II.  Admission of Alleged Hearsay

There was testimony that conversations concerning McDonough between Dean of Keene State College William Whybrew and two students occurred sometime early in 1981. McDonough argues that the characterization of the conversations as student "complaints" was inadmissible hearsay. Assuming, without deciding, that the characterization of these conversations as complaints was hearsay, it is not clear to us that McDonough's counsel raised this exact objection at trial. Rather, it appears that counsel was objecting to the admission of the actual content of those conversations, rather than to the phrasing of defense counsel's question which included the term "complaints." (Transcript dated August 27 and 28, 1984 at pp. 15-16.) The hearsay objection of McDonough's counsel to the actual content of the conversation was in fact subsequently sustained. (Transcript Vol. VIII at p. 86). Moreover, counsel for McDonough, himself, conducted extensive direct examination in

-5-

this area and in doing so appears to have adopted the characterization of the conversations as having involved "complaints." (Transcript Vol. VI at pp. 164-74; Vol. VIII at p. 129.) We find this objection waived therefore.

McDonough also contends that the district court erred in admitting testimony concerning a meeting at which Dean of Student Affairs Ronald Herron, Director of Financial Aid Claire Smith, McDonough and a student from Connecticut were present. Dean Herron testified that he learned that the student's parents were concerned about the cost that a non-New Hampshire resident must pay to attend Keene State and wanted that student, contrary to the student's desire, to return to Connecticut to attend school. (Transcript Vol. VI at p. 87-89.) Counsel for McDonough objected to testimony about the parent's concerns as hearsay and McDonough renews that objection on appeal. (Id.) We find no error in the admission of this testimony. The trial judge correctly pointed out that this testimony was not being offered for the truth of the matter asserted, i.e., that the parents were, in fact, concerned about the cost of an out-of-state education. (Id. at 88-89). Rather, the testimony was elicited as part of the evidence to show that, according to Herron, McDonough had actively interfered with Dean Herron's attempt, as dean of student affairs, to assist this student with her problem, by repeatedly answering questions for the student and

denigrating the role of parents in a child's college and career decision. (Id. at 89-97).

Finally, McDonough objects to the district court permitting both Dean Herron and Janet Grayson, a Keene State literature professor, to testify, over objection, that they were aware that faculty members had taken personally a remark made by McDonough and published in a newspaper that professors are scum. (Transcript Vol. VI at pp. 103-05; Vol. VIII at pp. 174-75.) We will assume that McDonough is correct in contending that this testimony was hearsay. We determine, in any event, that this testimony was cumulative and therefore its admission was harmless. See United States v. Palow, 777 F.2d 52, 57 (1st Cir. 1985), cert. denied, 106 S. Ct. 1277 (1986) (although court erred in admitting hearsay statements, those statements were cumulative of other properly admitted evidence and admission was harmless).

Two other individuals testified, without objection by McDonough, that the faculty took McDonough's reference to scum personally. (Testimony of Director of Resource Administration Robert L. Mallat, Jr., Transcript Vol. VIII at p. 67; Testimony of Dean Whybrew, Id. at 121.) Moreover Dean Herron testified to incidents when he felt publicly ridiculed by McDonough. (Transcript Vol. VI at p. 101-02.)

In addition, we refer to some of the exhibits admitted into evidence. Plaintiff's Exhibit 35 was a letter written by

-7-

Charles Weed, who team-taught a course with McDonough, which included the following:

> "I believe Dr. McDonough has conducted himself in this community of scholars with ridicule and intolerance toward individual faculty members and the collective faculty. In fact, I was a recipient of some of his ridicule in the classroom and other settings, and I do not believe it led to an increase in the amount of free inquiry or objectivity."

Defendants' Exhibit E, a Discipline Peer Evaluation Committee (D.P.E.C.) Report, (a peer evaluation of McDonough conducted by faculty members in his discipline in accordance with the collective bargaining agreement) stated in summary:

> "Although there is evidence that during the first semester Professor McDonough was an outstanding teacher and a productive scholar, his vilification of members of the college community constitutes unethical and unprofessional conduct which is destructive to the academic environment."

Although McDonough's trial counsel objected to admission of unspecified portions of these exhibits as containing "hearsay items" or "as to hearsay uses," (Transcript dated August 27 and 28, 1984 at pp. 81, 191), we need not pass on that question since McDonough has not pressed any objection to the admission of these exhibits on appeal. Further, Exhibit E1, (letters written by individual members of the D.P.E.C.), to which no objection was made, contained statements such as: "This role has also been of service to the college, although Craig would be more effective if he did not deprecate (individually, and as a group) his colleagues."

-8-

In sum, we are not persuaded by any of McDonough's claims of reversible error as to the admission of hearsay because we have determined that (a) the objection was either not properly raised or preserved; (b) the testimony was, in fact, not hearsay; or (c) assuming hearsay was admitted, it was cumulative and its admission was harmless.

III. Jury Voir Dire

In addition to the general questions routinely asked of potential jurors, the district court asked three additional questions. In repeating these questions to each individual potential juror, the judge used minor insignificant variations in language; however, the following is an accurate representation of the questions asked:

> "The plaintiff in this matter is a Marxist and believes in the Marxist doctrine. He's also been referred to as a Communist. Would that in any way preclude you from arriving at an impartial decision in this matter?
>
> "Would you for any reason prejudge this matter because of the plaintiff's political beliefs?
>
> "Would the fact that he teaches in a public institution have any effect on you in arriving at an impartial decision?"

(See Transcript of Jury Selection.)

On appeal, McDonough contends that the district court abused its discretion in not further extending voir dire or asking other questions proposed by McDonough and that this failure prevented him from effectively and intelligently exercising his peremptory challenges. He argues that the jurors

-9-

selected may have had unacknowledged or unconscious bias and bases this inference on the acknowledged bias of those potential jurors excused for cause. Aside from the fact that (1) McDonough fails to support his contention of an inadequate voir dire with any specifics as to what any "further extension" would consist of or what questions in particular should have been asked and (2) McDonough raised no issue regarding any alleged impairment of peremptory challenges before the district court, we find his unadorned inference of unacknowledged bias on the part of actual jurors based on the acknowledged bias of potential jurors excused for cause much too tenuous a thread on which to find an abuse of discretion.

IV. Conduct of the Trial Judge

McDonough's final claim on appeal is that the trial judge made comments at trial which were meant to ridicule and belittle both McDonough and his trial counsel and which improperly affected the jury's verdict.

The transcripts of this ten-day trial indicate that the judge, at times, became annoyed and impatient, not without some justification it appears, by the tendency of McDonough's counsel to ask repetitive questions or to spend inordinate time on minor matters, the relevancy of which was not readily apparent. The remarks of the judge, read in their context, indicate frustration with the slow movement of the trial, but were not so unrestrained such that they should be characterized

-10-

as ridicule or belittling and certainly the record does not support McDonough's suggestion that the remarks were <u>intended</u> to ridicule and belittle.

In addition, the trial judge addressed the issue of his response to counsel and his role at trial in his charge to the jury. In pertinent part, the judge stated:

> "Sometimes it seems necessary to admonish counsel. You should not hold that against his client in any way, or draw the conclusions that I favor any side in this controversy, for all outstanding factual issues are for you to determine, and not the Court.
>
> "During the course of the trial, and [sic] I may have asked questions of a witness in order to obtain information or bring out some fact or facts not fully developed by this testimony. You should not take my questions to witnesses as any indication of the Court's opinion as to how you should determine the issue of fact. Remember at all times that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your findings as to facts.
>
> "Now, the Federal Court Judge may comment on the evidence. And when I comment on the evidence, as I have done in this case, I will tell you I am commenting; and if my recollection differs from yours, just as in the case of the counsel in this case, your recollection must govern what took place, and the evidence you heard and not mine. (Transcript, Charge of the Court at p. 26.)
>
> . . .
>
> "Now, I instruct you that, if anything I have said or done anything, [sic] which has suggested to you that I am included [sic] to favor the claims or positions of either party, you will not permit yourself to be influenced by any such suggestion.
>
> "I have not expressed, nor have I intended to express, nor have I intimated, nor have I intended to intimate, any opinion as to what witnesses are or are not worthy of credence; what facts are or are not established; or what inferences should be drawn form the evidence

-11-

adduced. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it." (<u>Id</u>. at 47-48).

We conclude from our reading of the record that the judge's conduct did not result in an unfair trial.

<u>The judgment for the defendants is affirmed</u>.