UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>V.<br><br>JOHN LEONARD ECKER<br><br>    Defendant. | Criminal No. 89-30028-NMG-1 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

Defendant John Leonard Ecker submits this memorandum in support of his motion to dismiss the pending indictment (the "Indictment") and respectfully states as follows.

**INTRODUCTION**

Mr. Ecker moves to dismiss the Indictment charging him as a felon in possession of a firearm. The Indictment was returned on **November 8, 1989**, and Mr. Ecker has been held in federal custody ever since. Yet for more than 15 years, Mr. Ecker has not been tried (much less convicted) of any charge. The government has held Mr. Ecker in a state of perpetual pretrial confinement because of his mental illness. Deemed long-term incompetent without the expectation of regaining competency, Mr. Ecker has been held for more than 15 years at various federal facilities pending a trial that will never take place. Even though Mr. Ecker has already been confined awaiting trial for longer than the mandatory minimum sentence that he faces if convicted, the government refuses to dismiss the Indictment. The Indictment — which is now both stale and irrelevant — serves no legitimate purpose.

Importantly, Mr. Ecker does not move to dismiss the Indictment with the hope that he will be set free. Mr. Ecker is currently incarcerated pursuant to a finding (made in 1993) of

dangerousness pursuant to 18 U.S.C. § 4246. Even if the Indictment is dismissed, Mr. Ecker will still be detained pursuant to federal law. *Id.* The Indictment, however, is by no means harmless. The Indictment has prevented the transfer of Mr. Ecker to state custody for *treatment*, as Massachusetts has refused to accept custody of Mr. Ecker until the pending federal charges are resolved. Holding Mr. Ecker in federal custody for more than 15 years, with no end in sight, and with *no expectation or hope of trial*, is a violation of his constitutional right to due process and liberty. As set forth more fully below, the Indictment should be dismissed in its entirety, and this Court should order the government to transfer Mr. Ecker to a suitable Massachusetts mental health facility with all deliberate speed.

## STATEMENT OF FACTS

Mr. Ecker is charged under 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) with being a felon in possession of a firearm, and he is subject to the provisions of 18 U.S.C. § 924 (e), for which the mandatory minimum sentence is 15 years. 18 U.S.C. § 924 (2005); *U.S. v. Ecker*, No. 89-30028 (D. Mass. filed July 14, 1995). Mr. Ecker is a resident of the Commonwealth of Massachusetts, and his mother continues to reside here. They both insist that he be returned to Massachusetts so that he can receive appropriate treatment.

### I. Mr. Ecker's Early Years

Mr. Ecker's history is one of longstanding and continuous mental illness. In 1974, two months after entering high school in western Massachusetts, Mr. Ecker was hospitalized at McLean Hospital for setting fires at his school. *See Transfer Summary*, dated June 14, 1999 attached hereto as Exhibit ("Ex.") A, at 1. He was disruptive during hospitalization, set more fires, and was eventually diagnosed with childhood schizophrenia. *See Pre-Release Evaluation*, dated March 31, 1993, attached hereto as Ex. B. In December 1974, he was transferred to

Northampton State Hospital. *Id.* Mr. Ecker was ultimately diagnosed as a schizophrenic suffering from a long-standing character disorder.

In 1982, Mr. Ecker was convicted of an assault and battery that occurred in 1979. *See Pre-Release Evaluation*, Ex. B. In 1984, Mr. Ecker's parole was revoked. *Id.* At various times between 1984 and 1988, while he was in the Massachusetts correctional system, Mr. Ecker was hospitalized at Bridgewater State Prison. He was ultimately discharged from Massachusetts state prison in September 1988. *Id.* Shortly after his release in 1989, Mr. Ecker was arrested and indicted on this charge, a felon in possession.

## II.     Mr. Ecker's Permanent Incompetence To Stand Trial

Upon his arrest and indictment, Mr. Ecker was immediately subjected to a series of mental examinations pursuant to 18 U.S.C. § 4241 to determine his competency to stand trial.[1] *Pre-Release Evaluation*, Ex. B. From January 1990 to March 1993, Mr. Ecker underwent seven evaluations of his competency at the Federal Medical Center in Butner, North Carolina; the Federal Medical Center in Springfield, Missouri; and the Federal Medical Center in Rochester, Minnesota. *Id.* After each such examination. Mr. Ecker either was found incompetent or, when he was found competent, the Court (and the government) determined that he quickly lapsed into incompetence.[2] *Id.* Ever since 1990, Mr. Ecker has been diagnosed with paranoid beliefs,

---

[1] It is somewhat beside the point, but, given the fact that he was *immediately* subjected to multiple psychological tests to determine his competency, it is likely that Mr. Ecker was incompetent at the time of the offense and would have a solid defense even if the case were able to proceed.

[2] For example, Mr. Ecker was found competent on July 13, 1990 when a team of treating psychiatrists diagnosed him with a personality disorder with paranoid, antisocial, histrionic, and narcissistic traits that were "in remission." Less than one month later, on August 10, 1990, in court proceedings to determine his competency to stand trial, Mr. Ecker "decompensated." *See United States v. Ecker,* 30 F.3d 966, 967 (8th Cir. 1994) ("*Ecker I*"). He was ordered to undergo further psychiatric evaluation. One year later, Mr. Ecker again testified on August 27, 1991 and was found competent by Judge Freedman. Upon transfer to the Essex County Correctional Facility to await trial, however, he attempted suicide by hanging. He was again declared incompetent and required to take anti-psychotic medication. *See Order (Ponsor, J.),* dated January 9, 1992, attached hereto as Ex. N.

unpredictable behavior, and an inability to assist in his defense. *See Pre-Release Evaluation*, dated March 31, 1999, Ex. B.

After the last of these seven medical examinations, conducted on March 23, 1993, at the Federal Medical Center in Rochester, Minnesota, the Bureau of Prisons certified Mr. Ecker mentally incompetent to stand trial and unlikely to gain competency. *See Ecker I*, 30 F.3d at 967; *Pre-Release Evaluation*, Ex. B. Because of his continuing incompetence, Mr. Ecker could no longer be held by the short-term pretrial incarceration provisions of 18 U.S.C. § 4241. Therefore, on April 16, 1993, this Court (Keeton, J.) found him incompetent to stand trial and directed that he undergo an evaluation to determine whether, due to his mental condition, he posed a danger to persons or property. *See Order*, dated April 16, 1993, attached hereto as Ex. D; *Pre-Release Evaluation*, Ex. B. The Court concluded that "[Mr.] Ecker had not responded to treatment and had little prospect of regaining competency." *See Order*, dated June 28, 1993, attached hereto as Ex. E.

During his odyssey through the federal prison system, Mr. Ecker was transferred to a facility in Rochester, Minnesota.[3] on October 19, 1993, the United States District Court for the District of Massachusetts conducted a hearing and committed Mr. Ecker to the custody of the Attorney General as a dangerous person pursuant to 18 U.S.C. § 4246. *See United States v. Ecker*, 78 F.3d 726, 727 (1st Cir. 1996) ("*Ecker II*"). Mr. Ecker appealed his commitment to the U.S. Court of Appeals for the Eighth Circuit, which affirmed the commitment order. *Ecker I*, 30 F.3d at 969-71. Notably, the court held that, because Mr. Ecker's total time in confinement *up to*

---

[3] During his sixteen years in the federal prison system, Ecker has been shuffled continuously between FMC-Devens (Massachusetts), FMC-Rochester (Minnesota), FMC-Butner (North Carolina), and USMCFP-Springfield (Missouri). In addition, each time he is brought to Massachusetts for a hearing, he must pass through the federal transfer station in Oklahoma.

*that point* (more than 4 years) was less than the possible sentence, there was not *yet* a due process violation. *Id*. at 969-70.

### III.     The Indictment Prevents Mr. Ecker's Transfer to a Massachusetts Facility

Mr. Ecker was transferred to the Federal Medical Center in Springfield, Missouri in or about 1994. *Ecker II*, 78 F.3d at 727. Consistent with 18 U.S.C. § 4246, the Bureau of Prisons put a priority on returning Mr. Ecker to an institution in his home state of Massachusetts. At the time, however, Massachusetts refused to accept this transfer *based on the pending federal Indictment*. *Id.; see also* Defendant's Brief, *U.S. v. Ecker*, No. 89-30028 (D. Mass. 1995) ("Defendant's Brief"), at Exhibit A *(Risk Assessment Review Panel*, dated Oct. 23, 1994 ("The consensus of his risk assessment review panel was that Mr. Ecker is in need of inpatient psychiatric treatment… Mark Ecker [Mr. Ecker's brother] has also looked into hospital placement for his brother in the state of Massachusetts. He was told by mental health authorities that with pending charges, state hospital placement for the patient in Massachusetts would not be possible…. Requests have been sent to the Spring Grove State Hospital in Maryland for interstate transfer of the patient. Requests have been denied.").

In 1995, Mr. Ecker moved to dismiss the Indictment. Judge Keeton denied the motion. *U.S. v. Ecker*, No. 89-30028, *Memorandum Order,* (D. Mass. filed July 14, 1995), attached hereto as G; *see also Ecker II*, 78 F.3d. at 728. The First Circuit affirmed, but expressly left open the question whether dismissal would be required under different circumstances — for instance, where the commitment were indefinite and/or exceeded the mandatory minimum penalty. *Ecker II*, 78 F.3d at 728-29. The court also emphasized that, under 18 U.S.C. §§ 4241 and 4246, the Attorney General had a *duty* to place Mr. Ecker in Massachusetts if it was possible to do so. *Id.* at 730-31.

**IV.     Recent Events**

In February 2004, Dr. Lucking, Mr. Ecker's treating psychiatrist at FMC-Butner, NC — where Mr. Ecker, most recently, been detained — issued an opinion that Mr. Ecker was competent to stand trial.[4]  Dr. Lucking believed that Mr. Ecker's restored competency was based, in part, on the success of various antipsychotic medications in treating Mr. Ecker's persistent symptoms.  *See Letter*, Ex. H; *Transcript of Hearing*, dated July 14, 2005 ("Transcript"), attached hereto as Ex. I, at 35-37.  The warden of the Federal Medical Center at Butner, North Carolina, issued a Certificate of Restoration of Competency on March 9, 2004.  *See Letter*, dated March 9, 2004, attached hereto as Ex. J.  On March 31, 2004, the government requested that a competency hearing be held.

Despite Dr. Lucking's March 2004 opinion and soon after requesting a competency hearing, the government challenged Mr. Ecker's competency.  On June 16, 2004, the United States requested a further psychiatric evaluation and a hearing to determine Mr. Ecker's competency to stand trial.  *Motion for Further Psychiatric Evaluation*, dated June 16, 2004, ("Motion for Further Psychiatric Evaluation"), attached hereto as Ex. K.  Further, based on certain letters and other additional information,  Dr. Lucking issued an Addendum to his Annual Psychiatric Report and asserted that, after viewing such additional information, Mr. Ecker's competency was in doubt.  *See Letter from Warden A.F. Beeler to Hon. Robert E. Keeton*, dated June 21, 2004, attached hereto as Ex. L; *Motion for Further Psychiatric Evaluation*, Ex. K; *Transcript*, Ex. I, at 41.

A hearing was held on June 21, 2004, to address Mr. Ecker's request for new counsel and the government's renewed challenge to Mr. Ecker's competency.  The Court allowed

---

[4]  Dr. Lucking nonetheless concluded that Mr. Ecker still met the criteria for commitment pursuant to 18 U.S.C. § 4246.  *See* Letter dated March 9, 2004, attached hereto as Ex. H.

Mr. Ecker's request for appointment of new counsel. present counsel, however, was not appointed until November 5, 2004. On January 25, 2005, a status conference was held. The Court granted the government's motion to return Mr. Ecker to federal custody for further evaluation. Defendant, meanwhile, sought and was granted funding under the Criminal Justice Act to retain an expert to evaluate Mr. Ecker's competency. Upon completion of Defendant's psychiatric examination, Mr. Ecker was returned to FMC-Butner for further evaluation by the government's psychiatrist.

On June 8, 2005, the United States filed a status report as to Mr. Ecker. *See Government's Status Report,* attached hereto as Ex. M. On July 14, 2005, the Court held a hearing to assess Mr. Ecker's competency and to consider the government's request that Mr. Ecker be forcibly medicated in an effort to promote his competency. Importantly, at the hearing, Dr. Lucking testified that Mr. Ecker was not competent to stand trial, nor was he likely to regain competency in the future, regardless of his mediation. *Transcript*, Ex. I, at 43, 45-46. Though the government argued that Mr. Ecker should be forcibly medicated to return him to competency, *Id.* at 46-47, Dr. Lucking acknowledged that forced medication had been unable to restore Mr. Ecker's competency in the past and would not necessarily restore Mr. Ecker's competency. *Id.* at 47-49, 58-59. Indeed, the government's own psychiatrist conceded that Mr. Ecker was long-term incompetent with little likelihood of becoming competent, testifying:

> I have some questions about whether his competency can be restored, given the fact that I thought he was competent at the time. However, he continued to have some residual psychotic symptoms that remain even when he is adequately treated. This casts some doubt upon whether there is a substantial probability that he can be restored to competency. There is a likelihood, a chance, but I don't know that there exists a substantial probability, I would not be able to know unless I would get him back and reevaluate him.

*Id.* at 49.

Upon conclusion of Dr. Lucking's testimony, Judge Keeton denied the government's request to medicate Mr. Ecker, noting that Mr. Ecker is not "substantially likely" to become competent as a result of forced medication.[5] *Id.* at 67. In the strongest terms possible, Judge Keeton acknowledged that Mr. Ecker is long term incompetent with *no* hope of regaining competency in the near future. *Id.* at 61. The Court stated: "Now, I also find that Mr. Ecker is not now competent to stand trial, and that it is my present finding *that it is not foreseeable that he will be likely to become competent to stand trial anytime in the near future, so it is impossible in those circumstances for me to schedule a trial.*" *Id.* (emphasis added).

At present, Mr. Ecker remains confined indefinitely in the custody of the Attorney General pursuant to the finding of dangerousness under 18 U.S.C. § 4246. As this Court has found, there is little hope that Mr. Ecker's condition will improve in the near future and it is impossible to schedule trial. With no trial in sight, the Indictment must be dismissed.

## ARGUMENT

Mr. Ecker remains in federal custody (for more than 15 years now), not because he is a convicted felon, but because he is tragically ill. Indeed, he should have been transferred to state custody for treatment years ago. *See* 18 U.S.C. § 4246; *Ecker II*, 78 F.3d at 730-31. In pursuing an Indictment that is now meaningless, the government has placed Mr. Ecker in a permanent state of legal limbo: Mr. Ecker is unable to resolve the pending charges because of his mental illness, and Massachusetts authorities are unwilling (or unable) to accept Mr. Ecker for civil commitment because of the pending charges. Mr. Ecker's indefinite confinement in federal custody awaiting a trial that will never take place is a violation of his right to liberty and due

---

[5] Mr. Ecker's *pro se* motion to dismiss his current counsel was also denied. *Transcript*, Ex. I, at 60-61, 67.

process and requires the dismissal of the Indictment. *See* U.S. CONST. Amend. V; *Jackson v. Indiana*, 406 U.S. 715, 729-30 (1972); *Ecker I*, 30 F.3d at 969-70.

## I. MR. ECKER'S INDEFINITE COMMITMENT VIOLATES HIS CONSTITUTIONAL RIGHT TO LIBERTY AND DUE PROCESS

Mr. Ecker's constitutional rights cannot be ignored merely because he is incompetent to stand trial. *See Jackson*, 406 U.S. at 729-30; *Ecker I*, 30 F.3d at 969-70. Indeed, the *indefinite commitment* of an accused, even one found dangerous to society, raises significant constitutional concerns. *See, e.g.*, *U.S. v. Walker*, 335 F. Supp. 705, 708 (N.D. Cal. 1971) ("If read literally … Section 4246 permits long-term detention of a mentally deficient accused, *without treatment*, simply because he is incompetent. Such an interpretation would certainly face constitutional problems under *Robinson v. California*.") (emphasis in original); *Cook v. Ciccone*, 312 F. Supp. 822, 824 (W.D. Mo. 1970) (explaining that the provisions of 18 U.S.C. § 4246 are subject to constitutional limitations and that commitment under §4246 is to be temporary in nature).

The Supreme Court has held that, not surprisingly, lifetime pretrial commitment violates an accused's due process rights under the Fifth Amendment. *Jackson*, 406 U.S. at 738; *United States v. DeBellis*, 649 F.2d 1, 3 (1st Cir. 1981); *Walker*, 335 F. Supp. at 705-6, 708; *Cook* 312 F. Supp. at 824; *Birnbaum v. Harris,* , 222 F. Supp 919 (W.D.Mo. 1963); *Carmen v. Settle,* 209 F. Supp. 64, 67-68 (W.D. Mo. 1962); *Wright v. Steele*, 125 F. Supp. 1, 3-4 (W.D. Mo. 1962). "[D]ue process requires that the *nature and duration* of commitment bear some *reasonable relation to the purpose* for which the individual is committed." *Jackson*, 406 U.S. at 738 (emphasis added). The overarching point is that the period for which a mentally incompetent accused can be held awaiting trial must be limited and reasonable. *See, e.g.*, *DeBellis*, 649 F.2d at 3-4; *Birnbaum*, 222 F. Supp 919, at; *Carmen,* 209 F. Supp. at, 67-68; *Wright*, 125 F. Supp. at 3-4.

Accordingly, the "continued commitment [of an accused] *must be justified*" by progress toward trial. *Jackson*, 406 U.S. at 738 (emphasis added). In this case, there is no such progress. The government, through both its treating psychiatrist and prosecuting attorney, conceded as much at the July 2005 hearing, acknowledging that Mr. Ecker is not likely to gain competency and therefore not likely *ever* to face trial on these charges. *Transcript*, Ex. I, at 47-49, 58-59. By definition, there can be no progress toward trial in this situation, and Mr. Ecker's confinement awaiting trial serves no legitimate purpose. *See Jackson,* 406 U.S. at 738 (holding that commitment must be justified by progress toward trial). Indeed, Mr. Ecker is no closer to trial now than he was in 1989. As this Court has already found, there is *no* realistic expectation that Mr. Ecker will be competent for a trial in the near future. *Transcript*, Ex. I, at 61. A 16-year old indictment is not just stale; where there is no expectation of trial, it is also unconstitutional. *See Jackson*, 406 U.S. at 739 (refusing to allow the continued commitment of an accused who lacked "a substantial probability that he will ever be able to participate fully in a trial"); *see also DeBellis*, 649 F.2d at 3 ("Courts have long held that the period of commitment for determination of competency to stand trial must be "reasonable," [internal citations omitted] and indeed may continue only until it is determined whether there is a reasonable chance an accused will be able to stand trial in the near future"); *Wright*, 125 F. Supp. at 4 (holding that "to construe the statutes mentioned as granting the right to hold this particular petitioner for a longer time [than one and a half years], in these circumstances, would be to extend them beyond constitutional limits").

II. **THE DURATION OF MR. ECKER'S CONFINEMENT IS ALSO UNCONSTITUTIONAL BECAUSE IT EXCEEDS HIS PROBABLE SENTENCE.**

There is a constitutional limit to the length of time an accused can be held relative to his potential sentence, even when that sentence is lengthy. *See Birnbaum*, 222 F. Supp at 919 (finding that a period of time of three years was allowable given that the penalty of death or

imprisonment for life, but acknowledging that there is a limit to how long the accused could be held); *Carmen*, 209 F. Supp. at 67-68 (finding that two years of commitment, where the indictment was for murder, was not too long, but that prolonged commitment would become unreasonable). Courts have demonstrated an intolerance with depriving an accused of his liberty through pretrial confinement without due process of law, and that intolerance reaches its limit when the length of pretrial confinement exceeds the sentence he faces. *DeBellis*, 649 F.2d at 2-3 (vacating an order by the district court that allowed the accused appellant to be committed beyond his maximum sentence). In this very case, the Eighth Circuit noted that Mr. Ecker's due process rights would be violated if his commitment continued beyond the period of his "possible" sentence. *Ecker I,* 30 F.3d at 969-70*; see also DeBellis*, 649 F.2d at 3; *Birnbaum*, 222 F. Supp at 919.

      Here, Mr. Ecker's nearly 16-year pretrial confinement already exceeds his probable sentence. *See Ecker I*, 30 F.3d at 969-70.[6] If Mr. Ecker's competency were restored tomorrow, allowing him to be tried on the Indictment, he would receive credit for time served dating back to 1989. *See* 18 U.S.C. § 3585; *DeBellis*, 649 F.2d at 2 ("[C]redit toward service of a sentence must be given for 'any time spent in custody in connection with the offense or acts for which sentence was imposed,' and we think appellant's time served so qualifies"). Given that Mr. Ecker is charged with a crime carrying a 15-year mandatory minimum sentence, he has already

---

[6] *See also DeBellis*, 649 F.2d at 3 ("Because it would clearly violate the constitution to imprison even a convicted person for a longer period than allowed by statute for commission of a crime, the only basis which could justify confinement in these circumstances is an accused's mental state… No case that we have found has presented a factual setting in which commitment for competency determination alone has exceeded the maximum possible sentence, and we think our holding that it may not do so merely represents an inevitable application of the reasonableness limitation to that setting"); Wright, 125 F. Supp. at, 3-4 (holding that regardless of finding of dangerousness, length of commitment should not exceed the maximum possible sentence).

served longer than his probable sentence if convicted.[7] *See DeBellis,* 694 F.2d at 2. Under the Eighth Circuit's reasoning in this same case, the mere length of Mr. Ecker's pretrial confinement warrants the dismissal of the Indictment, particularly as there is no likelihood of a trial in the near future.

### III. THE GOVERNMENT IS OBLIGATED TO TRANSFER MR. ECKER TO A STATE INSTITUTION PURSUANT TO 18 U.S.C. § 4246

The statute by which Mr. Ecker is currently confined, 18 U.S.C. § 4246, provides for custody of mentally ill individuals "who no longer realistically can be considered awaiting trial because there is little possibility of their regaining competency." *See United States v. Charters*, 829 F.2d 479, 485 (4th Cir. 1987) (*reversed on other grounds*, 863 F.2d 402 (4th Cir. 1988)). According to § 4246, however, responsibility for the care of mentally-ill persons is rightly the province of the state. The civil commitment statutes explicitly direct the Attorney General to utilize state resources to house and treat mentally ill persons such as Mr. Ecker. *See* 18 U.S.C. § 4246(e)(2)(A-B). Indeed, the First Circuit has held, in this very case, that: "The civil commitment statute, 18 U.S.C. § 4246, requires federal authorities to place Mr. Ecker in an appropriate state institution in his home state, Massachusetts, if possible." *Ecker II,* 78 F.3d at 727 (emphasis added); *see also Ecker I,* 30 F.3d at 971 (holding "[w]e do observe that the Attorney General must continue efforts to place Mr. Ecker in a state facility of his domicile and that while confined Mr. Ecker shall receive treatment which may lead to his release or conditional release").[8] Longtime federal commitment should only continue *in rare cases* where a person has

---

[7] To be sure, Mr. Ecker may not have served the *maximum* sentence while awaiting trial in this case, but given the nature of the offense (Mr. Ecker was not charged with using the firearm in question in conjunction with any other crime), Mr. Ecker's relatively limited criminal history, and his mitigating mental health issues (which stem from his earliest childhood and undoubtedly impacted his entire criminal history), the Court most certainly would have sentenced Mr. Ecker to the lengthy mandatory term of 15 years.

[8] *See also* United States v. Baker, 807 F.2d 1315, 1324 n. 6 (6th Cir. 1986) (noting that 18 U.S.C. § 4246 requires the Attorney General to release the committed individual to the state if the state will accept custody).

no permanent residence or there is no state willing to accept the person for confinement. *See Greenwood v. United States,* 350 U.S. 366, 374 (1956); *see also Baker*, 807 F.2d at 1323-24 (ongoing federal commitment pursuant to 18 U.S.C. § 4246 is to be used "only in those rare circumstances where a person has no permanent residence or there are no State authorities willing to accept him for commitment.").

Despite this clear directive from the statute *and* the First and Eighth Circuits, the government has been unable or unwilling to transfer Mr. Ecker to state custody. Massachusetts apparently refused to accept Mr. Ecker in 1996 "because of the pendency of the federal indictment."[9] *Ecker II,* 78 F.3d at 727. There is no evidence, however, that the Attorney General has made efforts to transfer Mr. Ecker to Massachusetts custody since that time, despite the circuit courts' clear directives to do so.

In any event, the pendency of the Indictment has not been harmless as the government may suggest. The prejudice of the Indictment is apparent: it condemns Mr. Ecker to permanent pretrial confinement in federal prison and prevents his transfer to an appropriate state mental facility as Congress has directed. *See* 18 U.S.C. § 4246. The only solution to remedy such prejudice and to give effect to § 4246 is to dismiss the Indictment and, pursuant to § 4246(e)(2), transfer Mr. Ecker to a Massachusetts institution, as already ordered by both the First and Eighth Circuits. *See Ecker I*, 30 F.3d at 971; *Ecker II*, 78 F.3d at 727.[10] Notably, any remaining interest

---

[9] *See also Risk Assessment Review Panel,* Ex. F. ("Mark Ecker [Ecker's brother] has also looked into hospital placement for his brother in the state of Massachusetts. He was told by mental health authorities that with pending charges, state hospital placement for the patient in Massachusetts would not be possible…. Requests have been sent to the Spring Grove State Hospital in Maryland for interstate transfer of the patient. Requests have been denied.").

[10] This Court has the power to facilitate the transfer of Mr. Ecker from federal custody to confinement in a state mental hospital. In cases where courts have ordered that an accused be released from federal custody, courts have stayed such an order while a transfer to the state is accomplished or notified state and local authorities of the release so that the state may make appropriate arrangements. *See, e.g.*, *Walker*, 335 F. Supp. at 711; *United States v. Jackson*, 306 F. Supp. 4, 7 (N.D. Cal. 1969).

the government has in confining Mr. Ecker as a dangerous person will adequately be served by complying with Congress's mandate in § 4246 and allowing his civil commitment within the Commonwealth of Massachusetts. *See generally, United States v. Sahhar*, 56 F.3d 1026, 1029-30 (9th Cir. 1995) (noting that the states have the principle responsibility for committing dangerous persons); *Kirkwood v. Harris*, 229 F. Supp. 904, 905 (W.D. Mo. 1964) ("In light of petitioner's history of serious mental illness, if his mental condition is *probably permanent*, the petitioner should be transferred to an appropriate state or other suitable institution …") (emphasis added).

## CONCLUSION

The government has acknowledged, as far back as 1994, that Mr. Ecker requires inpatient psychiatric treatment. *See Risk Assessment Review Panel*, Ex. F ("The consensus of his risk assessment review panel was that Mr. Ecker is in need of inpatient psychiatric treatment."). Unambiguous federal law, *see* § 4246(e)(2), and the explicit orders of two circuit courts in this case demand that such treatment occur within Mr. Ecker's state of residence, Massachusetts. But the Indictment prevents it. By continuing to pursue this Indictment, the government is subjecting Mr. Ecker to life imprisonment in federal custody without trial. This is unconstitutional and must end. *See, e.g.*, *Jackson*, 406 U.S. at 729-30, 738; *Ecker I*, 30 F.3d at 970; *Ecker II*, 78 F.3d at 727. Dismissal of the Indictment with an order that Mr. Ecker be transferred to an appropriate Massachusetts hospital for treatment is the only constitutionally acceptable solution.

For these reasons and for those outlined above, Mr. Ecker respectfully requests that the Court both dismiss the Indictment with prejudice and order the government to transfer Mr. Ecker to an appropriate mental health facility in the Commonwealth of Massachusetts.

Respectfully submitted,

JOHN LEONARD ECKER

By his attorneys,

/s/ Roberto M. Braceras
Roberto M. Braceras (BBO #566816)
Neil T. Smith (BBO #651157)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

DATED:  October 24, 2005

CERTIFICATE OF SERVICE

I, Neil T. Smith, counsel for John Leonard Ecker, hereby certify that on October 24, 2005, a true copy of the above document was served upon Assistant U.S. Attorney Carmody by ECF/mailing.

/s/ Neil T. Smith

Neil T. Smith

LIBA/1569197.3