F

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 89-30028-REK |
| | ) | |
| JOHN L. ECKER | ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS INDICTMENT WITH PREJUDICE

Defendant, John L. Ecker, is currently in the custody of the Attorney General pursuant to a commitment under 18 U.S.C. §4246. The indictment, charging a single count of possession of a firearm by a felon in violation of 18 U.S.C. §922(g)(1) and §924(a)(2), was returned November 8, 1989 and is still pending. As will be set forth in this memorandum, defendant contends that the indictment must be dismissed and he can no longer be subject to prosecution on the charged offense.

PROCEDURAL HISTORY

The indictment charges defendant with being a felon in possession of a firearm on or about October 30, 1989 at Springfield and elsewhere in the District of Massachusetts. Following defendant's arrest he underwent a series of studies with respect to his competency to stand trial pursuant to 18 U.S.C. §4241. Those studies occurred at the Federal Medical Center in Butner, North Carolina; the Federal Medical Center in Springfield, Missouri; and the Federal Medical Center in Rochester, Minnesota.

On April 30, 1993, the Federal Medical Center in Rochester certified that defendant was mentally ill and dangerous, and that he should be subject to the provisions of 18 U.S.C. §4246. After proceedings in the United States District Court for the District of Minnesota, defendant was committed by order of now-Chief Judge Paul A. Magnuson on October 19, 1993. While defendant's appeal from that commitment was pending, he was transferred again to the Federal Medical Center in Springfield, Missouri, where he now resides. The Eighth Circuit Court of Appeals affirmed the decision of the United States District Court on July 21, 1994. United States v. Ecker, 30 F.3d 966. Certiorari was denied on December 12, 1994.

On October 23, 1994, the periodic report required by 18 U.S.C. §4247(e)(B) was filed. (See Exhibit A attached.)

ARGUMENT

THE STATUTES RELATING TO OFFENDERS WITH MENTAL DISEASE OR DEFECT REQUIRE THAT THE INDICTMENT NOW BE DISMISSED.

To understand defendant's current status, it is necessary to understand how he got there. 18 U.S.C. §4241(d) provides as follows:

> (a) <u>Determination and disposition</u>.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--

2

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity permit the trial to proceed; and

(2) for an additional reasonable period of time until--

    (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

    (B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246.

The operative section is the final paragraph, which permits the custody status of the accused person, who has been found by a court not competent to stand trial, to be transferred from a temporary to a permanent commitment under 18 U.S.C. §4246. That commitment can occur only when a defendant's mental condition has "not so improved as to permit the trial" after "additional reasonable period of time" has passed to allow improvement.

Commitment pursuant to 18 U.S.C. §4246 is an event of significance. To commit a person, the government must bear a burden of proof of clear and convincing evidence that the person is presently suffering from mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. 18 U.S.C. §4246(d).

3

After a commitment under that statute, to be released, the person in custody bears a burden of demonstrating that, because of his rcovery from a mental disease or defect, his release would no longer create substantial risk of bodily injury to another person or serious damage to the property of another or that conditions of release exists which would alleviate the risk. 18 U.S.C. §4246(e).

Discharge is permitted only when the court which the ordered the commitment determines that the person has met the required standards of recovery by a fair preponderance of the evidence after certification by the director of the facility in which he is hospitalized, 18 U.S.C. §4246(e), or after hearing upon motion by counsel or legal guardian for the person, 18 U.S.C. §4247(h).

Defendant contends that once the government determines to commit, and commits, a person who has not been tried because of incompetency to stand trial, the charges must be dismissed. 18 U.S.C. §4246(a) reads in pertinent part:

> (a) <u>Institution of Proceeding</u>.--If the director of a facility in which a person is hospitalized certifies that a person whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(a), or against whom all criminal charges have been dismissed solely person, is presently suffering from a mental disease a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available....

It was the clear intent of Congress, however murky the language and convoluted the statutory structure, that persons would not be subject to commitment under 18 U.S.C. §4246 because

4

of incompetency to stand trial without a concomitant dismissal of the charges against them. This reading of the statute has been adopted by the Eighth Circuit Court of Appeals in this case. In rejecting defendant's argument that the court had been without jurisdiction to proceed against him under §4246, the Eighth Circuit reasoned as follows: "At all times, Ecker remained subject to criminal process calling for a mandatory minimum sentence of 15 years imprisonment. <u>He remained subject to possible trial until the final judicial determination of incompetency on April 16, 1993.</u>" <u>United States v. Ecker</u>, 30 F.3d at 969.

The Eighth Circuit arrived at this conclusion by analyzing the statute set forth above. It held that 18 U.S.C. §4241(d) provided for a reasonable period of time to determine competency and concluded that the period of over three years was not unreasonable here. <u>Id</u>. at 969.

Not only did it seem obvious to the Eighth Circuit that defendant can no longer be prosecuted on the indictment which is still pending in Massachusetts but the authors of the Crime Control Act of 1984 assumed this result.

> "Section 4246 covers those circumstances where state authorities will not institute civil commitment proceedings against the hospitalized defendant whose federal sentence is about to expire or against whom all criminal charges have been dropped for reasons related to his mental condition and who is presently mentally ill."

U.S. Congressional Administrative News, 1984, p. 3432.

- 5 -

Counsel has been unable to locate a court that has directly considered this question. In addition to the Eighth Circuit's observation in this case, the Fourth Circuit in United States v. Charters, 829 F.2d 479, 45 (4th Cir. 1987) (reversed on other grounds, 863 F.2d 402 (4th Cir. 1988) (en banc)) observed that "...18 U.S.C. §4246(a) provides for the custody of mentally ill individuals who no longer realistically can be considered awaiting trial because there is little possibility of their regaining competency." See also United States v. Baker, 807 F.2d 1315 (6th Cir. 1986).

Throughout the statute the Attorney General is directed, as a primary obligation, to attempt to obtain a state placement for a person committed to its care or custody under any of the various provisions of the statutes dealing with mentally ill or defective offenders. Congress felt that the responsibility for the care of insane persons was essentially a function of the state and intended that federal commitment continue only in rare circumstances where a person has no permanent residence or there is no state authority willing to accept him for commitment. 1984 U.S. Congressional Administrative News, p. 3432. The Attorney General is also directed and authorized to utilize state resources with respect to conditional rather than absolute discharges such as that described in 18 U.S.C. §4246(e)(2)(A) and (B). See, United States v. Ecker, 30 F.2d at 970.

The continued pendency of the indictment creates an additional statutory problem. As can be seen from Exhibit A at

6

3-4, the most recent annual report concerning defendant indicates that one significant barrier to his placement with state authorities is the pending federal indictment. The Executive Branch is thus in a peculiar position where one of its arms--the United States Bureau of Prisons--has been directed to try to place a person committed to its custody in a state facility and is prevented from doing so by another arm of the Executive Branch--the United States Attorneys Office for the District of Massachusetts. In effect, the continued vitality of the indictment interferes with defendant's right to state placement, thereby denying him due process of law.

## CONCLUSION

The Court is respectfully requested to order dismissal of the indictment pending in this case with prejudice.

JOHN L. ECKER
By his attorneys,

*Scott F. Tilsen* /ow

Scott F. Tilsen
   Attorney ID No. 11005X
Federal Defender Office
District of Minnesota
174 U.S. Courthouse
Minneapolis, MN  55401
Tel: 612-348-1755

*Owen S. Walker*
Owen S. Walker
   B.B.O. #513040
Federal Defender Office
125 Pearl Street, 3rd Floor
Boston, MA  02110
Tel: 617-424-0575

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon Assistant United States Attorney C. Jeffrey Kinder by delivery on Jan. 30, 1995.

*O. Walker*

7

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
UNITED STATES MEDICAL CENTER FOR FEDERAL PRISONERS
Springfield, Missouri

**RISK ASSESSMENT REVIEW REPORT**

ECKER, John          Reg. No. 90050-038          October 23, 1994

A risk review panel was convened to review the case of John Ecker. The panel consisted of David Reuterfors, Ph.D., ABPP, Chairperson, and members Eduardo Ulloa, M.D., and Daniel Taub, Ph.D. Mr. Ecker is currently committed to the U.S. Medical Center for Federal Prisoners under provisions of Title 18, U.S. Code, Section 4246. This is Mr. Ecker's only risk assessment review panel during his current hospitalization at the U.S. Medical Center. He was given a previous risk assessment review on March 31, 1993 at the Federal Medical Center, Rochester, Minnesota. The consensus of the panel at that time was that Mr. Ecker had a diagnosis of Schizophrenia, Paranoid Type. The panel also concluded that Mr. Ecker would be a substantial risk of bodily injury to another person or serious damage to the property of another if he were released to an unstructured environment.

**PSYCHIATRIC HISTORY:**

Mr. Ecker has been hospitalized on many occasions beginning in 1974. He was hospitalized at McClane Hospital, in the state of Massachusetts while attending high school. He has also been hospitalized at the North Hampton State Hospital where he escaped and he was also hospitalized in New Hampshire. Mr. Ecker has been hospitalized within the Federal Bureau of Prisons at the U.S. Medical Center for Federal Prisoners; FMC, Butner; and FMC, Rochester, Minnesota. Mr. Ecker has a history of developing romantic fixations with staff at all three of these Bureau of Prisons facilities.

**HISTORY OF VIOLENCE:**

Mr. Ecker has an extensive history of threatening behavior. His previous risk assessment review report of March 31, 1993 indicated that Mr. Ecker constructed a wick for a fire bomb to be placed in the gas tank of a neighbor's car and also threatened to obtain a gun and kill the neighbor and the neighbor's father. During August 1979, Mr. Ecker was charged with assault and battery with a dangerous weapon. He allegedly attacked a man with a hammer after finding his girlfriend, who he had reportedly been dating for five years, in bed with the same man. He was convicted of the charge of assault and battery with a dangerous weapon in 1982 and given a ten year sentence. He was subsequently paroled and his parole was revoked during January 1984, after he made threatening and obscene messages on his female parole officer's answering machine. He was also concurrently sentenced in September 1984 to three years on an

RISK ASSESSMENT REVIEW PANEL   Page #2
ECKER, John   Reg. No. 90050-038
October 23, 1994

arson conviction in Baltimore, Maryland. During November 1989, Mr. Ecker was arrested for being a felon in possession of a weapon. He was subsequently transferred to the Mental Health Unit of the Federal Medical Center, Butner, North Carolina. While at the Federal Medical Center, Butner, Mr. Ecker made a brief contact with a female case manager in which he subsequently tried to develop a romantic relationship with her. Mr. Ecker sent two more letters to this case manager late inn 1990, both letters were written in Spanish and in both letters he asked the case manager to marry him. While Mr. Ecker was detained in Massachusetts in August 1991, he began writing sexually explicit letters to a registered nurse at the United States Medical Center for Federal Prisoners, Springfield, Missouri. He also attempted to place phone calls to her which led to her changing her phone number to an unlisted number. A forensic report dated December 10, 1992, included the following: "Overall, the correspondence indicated he believed he had a considerable relationship with this woman and he still held to the fact that he loved her and wanted to marry her. Letters during December, however, indicate that Mr. Ecker's thinking began to deteriorate, for example, in a letter dated December 7, 1991, he wrote "You can't face me without body alarms, pampers, Haldol, mafia friends, and your ignorant right wing FBI prototypes, you're a punk." As a result of his letter writing to a nurse at the United States Medical Center, Springfield, Missouri, he was transferred to the Federal Medical Center, Rochester on August 6, 1992. During his current hospitalization he has not engaged in threatening behavior. However, he was instructed to terminate all correspondence with a female employee of a bank in which he has an account. The female employee viewed his correspondence as intrusive and requested all correspondence to end.

HOSPITAL COURSE:

Mr. Ecker was readmitted to the Mental Health Unit of the U.S. Medical Center on April 5, 1994. He was given an initial diagnosis of Schizophrenia, Paranoid Type. He was admitted taking Trazadone 50 mg. HS, Zoloft 100 mg. AM, and Perphenazine 28 mg. HS. Due to Mr. Ecker's history of threatening, inappropriate, and provocative behavior he was housed on a closed unit. During his initial hospitalization he complained of being overly sedated and as a consequence his Trazadone was decreased. While on the closed unit Mr. Ecker completed several vocational interest tests. His attitude during the completion of these tests were appropriate. During his hospitalization Mr. Ecker also engaged in individual psychotherapy with Carlos Tomelleri, M.D., Staff Psychiatrist. Throughout his hospitalization Mr. Ecker has been generally compliant with taking his medication on the prescribed schedule. As a consequence he was moved from a closed unit to a semi-open unit where he currently resides. While on the semi-open unit he has participated in recreation therapy. Mr. Ecker is currently

RISK ASSESSMENT REVIEW PANEL   Page #3
ECKER, John   Reg. No. 90050-038
October 23, 1994

taking Zoloft 150 mg. AM, Trazadone 100 mg. HS and Perphenazine 20 mg. HS. The consensus of his treatment team is that he is in need of inpatient psychiatric treatment.

**INTERVIEW IMPRESSIONS:**

Mr. Ecker was interviewed by the examining panel. The panel reviewed his criminal history, history of violence and threatening behavior, institutional adjustment, and present mental status. Throughout the interview Mr. Ecker was generally able to answer the panel's questions in a logical, coherent, and goal-directed manner. He denied experiencing visual or auditory hallucinations. Mr. Ecker denied that he was presently mentally ill or in need of psychotropic medication. However, he agreed to take psychotropic medication if released from incarceration.

**COMMUNITY IMPRESSIONS/RESOURCES:**

In formulating this section of the risk assessment review, Mr. Dwayne Walker, MSW, contacted Mr. Mark Ecker, the patient's brother, who lives in Springfield, Massachusetts, the patient's mother, Irene L. Ecker, who also lives in Springfield, Massachusetts, and Dr. Ira Packer of the Massachusetts Mental Health Department. Mr. Ecker was denied inpatient hospitalization in the state of Massachusetts earlier this year. Dr. Packer stated that should it be determined that the patient has made significant recovery and is appropriate for community placement, their office may be able to assist us in finding an appropriate residential placement.

Mark Ecker has also looked into hospital placement for his brother in the state of Massachusetts. He was told by mental health authorities that with pending charges, state hospital placement for the patient in Massachusetts would not be possible.

It appears the patient would have some family support if released to the community. He does not appear to have any relatives whom he could live with, however, both his brother and mother expressed interest in helping the patient get adjusted in the community should he be released. Mr. Ecker receives Social Security Disability payments. This resource would be available to him upon his release.

Since it appears that a two-stage, hospital-to-community, conditional release plan is not possible, outright conditional release to the community may be all that is available to the patient at this time. We will continue to solicit the state of Massachusetts to accept Mr. Ecker for inpatient hospitalization. This may be very difficult due to pending charges in that state. Requests have been sent to the Spring Grove State Hospital in

RISK ASSESSMENT REVIEW PANEL  Page #4
ECKER, John  Reg. No. 90050-038
October 23, 1994

Maryland for interstate transfer of the patient. Requests have been denied.

**OPINIONS AND RECOMMENDATIONS:**

Mr. Ecker has a current diagnosis of Schizophrenia, Paranoid Type. The consensus of his risk assessment review panel was that Mr. Ecker is in need of inpatient psychiatric treatment. Based on Mr. Ecker's present mental status and history of threatening and violent behavior, the consensus of the panel was that Mr. Ecker is currently a substantial risk to others or the property of others due to mental illness.

It should be noted that a prediction of dangerousness is of limited accuracy at the time of formulation. Furthermore, the accuracy of a prediction diminishes over time.

_____
David L. Reuterfors, Ph.D., ABPP
Chief, Psychology Services
Chairperson

_____
Eduardo Ulloa, M.D.
Staff Psychiatrist

REPORT PREPARED BY:

_____
Daniel V. Taub, Ph.D.
Staff Psychologist

_____
William R. Carter, Psy.D.
Staff Psychologist

WRC/sa
d: 11/10/94
t: 11/10/94