UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | ) |
| ) | Criminal Action |
| v. ) | No. 89-30028-NMG |
| ) |  |
| JOHN L. ECKER, ) |  |
| ) |  |
| Defendant, ) |  |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

Now comes the United States of America, in the above-captioned cause, by and through its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and opposes the defendant's Motion to Dismiss Indictment With Prejudice, and requests the Court to deny the motion for the reasons that the defendant's motion to dismiss this indictment is barred by the doctrine of *stare decisis* because this court is bound by the decision of the First Circuit Court of Appeals in *United States v. Ecker*, 78 F.3d 726 (1st Cir. 1996), in which the Court of Appeals affirmed the decision of Keeton, D.J., denying the defendant's previous motion to dismiss the instant indictment on essentially the same grounds. Therefore, this Court must deny the instant motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND:**

John Leonard Ecker has a long, complex and very serious psychiatric and criminal history. He is currently a patient hospitalized pursuant to 18 U.S.C. § 4246 (hospitalization of a person due for release but suffering from mental disease or defect) at the Federal Medical Center ("FMC") in Butner, North Carolina. He is not being held as a pre-trial detainee on the basis of

the pending Indictment.

Mr. Ecker has a lengthy history of violence and criminal activity, including prior convictions for arson, burglary, breaking and entering, and assault with a weapon. In November 1989, Ecker was indicted in the District of Massachusetts for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). Due to his past criminal history, he is subject to a mandatory minimum sentence of 15 years pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), and a maximum term of imprisonment of life imprisonment. *United States v. Stokes,* 388 F.3d 21, 28 (1st Cir. 2004), *vacated on other grounds,* 125 S.Ct.1678 (2005), *reinstated,* 2005 WL 2170091 (1st Cir. Sept. 8, 2005; *see also, Custis v. United States,* 511 U.S. 485, 487 (1994). In view of the seriousness of the offense in this case and the defendant's serious past criminal history, it is not at all clear that the defendant would have been sentenced only to the mandatory minimum in this case.

Mr. Ecker also has a lengthy history of mental illness, including diagnoses of Schizophrenia, Antisocial Personality Disorder, and delusions of an erotomanic nature. *See Ecker*, 78 F.3d at 727; *United States v. Ecker*, 30 F.3d 966, 970 n.6 (8th Cir. 1994). In March of 1993, after seven competency evaluations (two finding him competent and five finding him not competent), the district court in the District of Massachusetts, Keeton, D.J., found him long-term incompetent and that it was unlikely that he would regain competency in the near future.[1] *United*

---

[1] Contrary to the assertions in the defendant's memorandum, it is not insignificant that there have been several occasions during the pendency of this Indictment during which he has been found competent to stand trial, including Dr. Lucking's evaluation in February of 2004. This has been a recurrent pattern of the defendant's illness and the procedural history in this case in which the defendant can seem very logical and reasonable and not mentally ill. (*See* Exhibit 1, Riggs Declaration at ¶ 8, a psychiatrist who treated Ecker at FMC Devens). Indeed, the defendant sent a letter to the Court on October 10, 2005, *after* Judge Keeton's determination in

*States v. Ecker*, 78 F.3d at 727.

Thereafter, in October, 1993, the District Court of Minnesota[2], Magnuson, D.J., found that his mental illness rendered him incompetent to stand trial and dangerous to the public. *United States v. Ecker*, 30 F.3d at 967. Therefore, the district court committed him to the custody of the Attorney General pursuant to 18 U.S.C. § 4246.[3] *Id.* Ecker's commitment was upheld in the first instance by the Eighth Circuit in *United States v. Ecker*, 30 F.3d at 970 and again in 1998 after Ecker filed a motion for complete or conditional release. *Ecker,* 162 F.3d at 1165.

On July 13, 1999, Ecker was transferred to FMC Devens from the United States Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri. Riggs Declaration, ¶ 4. According to Dr. Riggs, Ecker's primary psychiatrist at FMC Devens, Ecker was noncompliant with his antipsychotic medication over three months, resulting in behavior that is consistent with a diagnosis of Schizophrenia, Paranoid Type. Id., ¶ 7. These signs include paranoia, loose associations, preoccupation with internal stimuli (manifested by conversations with himself in

---

July that he was not competent to stand trial. In that letter Ecker continues to assert his competence to stand trial and seeks his release from custody. (*See* Exhibit 2 attached hereto).

[2] The defendant misstates that the defendant's dangerousness determination was made in the District of Massachusetts – it was not, it was the District of Minnesota.

[3] Title 18 U.S.C. § 4246 details the procedures for hospitalization of a person due for release from prison but suffering from a "mental disease or defect." *See generally Ecker*, 78 F.3d at 728 n.2. The statute "provides for the indefinite hospitalization of a person who is due for release but who, as the result of a mental illness, poses a significant danger to the general public." *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997) (*citing United States v. Steil*, 916 F.2d 485, 487 (8th Cir. 1990)). Under the federal involuntary commitment scheme, the district courts are entrusted with "an awesome responsibility to the public to ensure that a clinical patient's release is safe." *United States v. Bilyk*, 949 F.2d 259, 261 (8th Cir. 1991) (*quoting United States v. Clark*, 893 F.2d 1277, 1282 (11th Cir. 1990)). Section 4246 "is a mechanism intended to provide a safeguard to the general public and to ensure that mentally ill and dangerous individuals receive proper treatment." *S.A.*, 129 F.3d at 999.

his cell), bizarre thoughts (such as asking for ether so he could perform surgery on himself), ambivalence, and flat affect.[4]

Most importantly to the Court's determination of this motion, Dr. Riggs noted that Mr. Ecker can appear to be very logical and reasonable at times, which could lead anyone to doubt his diagnosis as a Paranoid Schizophrenic. Moreover, Dr. Riggs' interaction with Ecker has "removed any doubt" from his mind; he is convinced that Ecker "is a very well-defended Paranoid Schizophrenic; *i.e.*, he has the ability for brief periods of time to present himself without any obvious psychotic symptoms due to his innate coping skills and ability to recognize when he might be about to say or do something which would be incriminating." Riggs Declaration, ¶ 8. Although such self-monitoring ability would ordinarily be seen as positive, Dr. Riggs is of the opinion that it actually makes Mr. Ecker more dangerous, given his underlying character disorder as a "manipulative psychopath." *Id.* In support of this opinion, Dr. Riggs notes that a good deal of Mr. Ecker's psychopathology "has to do with erotomanic traits which have led to a documented history of obsession with female Bureau of Prisons staff members." *Id.*

Echoing the opinion of Mr. Ecker's Risk Assessment Panel, Dr. Riggs opined that should Mr. Ecker be released from custody, he would discontinue all medication and, as Dr. Riggs observed, would deteriorate into flagrant Paranoid Schizophrenia and would definitely present a danger to others. Id., ¶ 9 and Exhibit "A" to Riggs Declaration. Lastly, Dr. Riggs notes that

---

[4] As a result, on August 16, 2000, an involuntary medication hearing was conducted pursuant to 28 C.F.R. §§ 549.43 et seq. The Hearing Examiner determined that Mr. Ecker is mentally ill and potentially dangerous to himself or others, that medication was necessary to treat his mental illness, and that he was gravely disabled. Riggs Declaration ¶ 7.

despite repeated efforts to place Mr. Ecker in his state of domicile (Massachusetts), state authorities have not been willing to assume responsibility for his custody, care, and treatment. On February 15, 2000, the Massachusetts Interstate Compact Coordinator (ICC) informed FMC Devens staff that the state "will not be able to accept John Ecker under the terms of the Interstate Compact for Mental Health, as there is no appropriate program available to meet his needs." *Id.*, ¶ 10 and Exhibit "B" to Riggs Declaration.

Dr. Riggs' opinion that outlines Mr. Ecker's ability to appear competent and without mental illness foreshadowed events to come. In September of 2002, Mr. Ecker was transferred from FMC Devens to FMC Butner as a result of his erotomanic attachment to a female at that institution. During that stay in Butner he began treating with another psychiatrist, Robert Lucking. On March 9, 2004, the A.F. Beeler, the Warden of the Federal Medical Center at Butner, North Carolina, issued a Certificate of Restoration of Competency to Stand Trial advising the Court that the defendant,"is able to understand the nature and consequences of the proceedings against him and to assist in his own defense." That Certification was based upon the Annual Update Report issued by the Mental Health Department at the Federal Medical Center ("FMC") Butner on February 17, 2004. The evaluation was headed by Robert G. Lucking, M.D., Staff Psychiatrist, who personally evaluated Mr. Ecker and found him to be competent to stand trial – yet still dangerous.

Some three months later, on June 7, 2004, after receiving new and additional information relative to Mr. Ecker's activities, Dr. Lucking issued an Addendum to that Annual Psychiatric Report asserting that after reviewing new information, the defendant's "current competency is in doubt and that another competency evaluation is indicated." Based upon Dr. Lucking's

5

addendum, on June 15, 2004, the Government filed a motion requesting a further psychiatric evaluation of the defendant be conducted in order to determine his competency to stand trial pursuant to 18 U.S.C. § 4241.

At a status conference held by the Court on January 25, 2005, after the appointment of new defense counsel, counsel for the government renewed its request for a further competency evaluation. Attorney Robert Braceras (who presently represents the defendant) did not oppose the government's request and also requested – on behalf of the defendant – that the Court authorize funds for an independent psychiatric evaluation of the defendant's competency. The Court granted the parties requests and ordered that after the defendant's independent evaluation was concluded, that the defendant be transported back to FCI-Butner so that the Government could also perform a competency evaluation.

Following the Conference on January 25, 2005, counsel for the defendant retained a psychiatrist to perform a competency evaluation of the defendant. After the report was completed sometime in late March or early April of 2005, the defendant was transported to FMC Butner where he underwent another competency evaluation. In June of 2005, that evaluation was complete. At that time Dr. Lucking found that Mr. Ecker was not competent to stand trial.

After an evidentiary hearing on July 14, 2005, Judge Keeton once again found the defendant not competent to stand trial and not likely to regain competency in the near future – even with the aid of forced medication. (A copy of the transcript of the hearing is attached as Exhibit I to the defendant's memorandum). During that hearing, although he opined that Mr. Ecker was not then competent to stand trial, Dr. Lucking did not rule out that possibility in the future.

In October 2005, after Judge Keeton's most recent finding that Ecker was not competent to stand trial, Mr. Ecker wrote another letter to the Court requesting a reconsideration of that finding, requesting that he not be forcibly medicated, requesting to be released and that he be allowed to marry the female upon whom he is presently fixated. (Exhibit 2).

**II. ARGUMENT:**

**A. The Defendant's Request Is Barred by the Doctrine of Stare Decisis**:

The defendant's motion to dismiss this indictment is barred by the doctrine of *stare decisis* because this court is bound by the decision of the First Circuit Court of Appeals in *United States v. Ecker*, 78 F.3d 726 (1st Cir. 1996), in which the Court of Appeals affirmed the decision of Keeton, D.J., denying the defendant's previous motion to dismiss the instant indictment on essentially the same grounds.[5] Therefore, this Court must deny the instant motion

The District Court is bound by that opinion in which the First Circuit upheld Judge Keeton's decision to deny the defendant's request to dismiss the instant indictment. The First Circuit closely examined the language and the structure of the federal mental health statutes and

---

[5] In addition to the 1996 First Circuit appeal, Ecker has made repeated challenges to the results of his competency evaluations, his civil commitment for dangerousness and to the continuing pendency of the instant criminal indictment. Each of these have been unsuccessful: *United States v. Ecker*, 162 F.3d 1165 (8th Cir. 1998)(civil commitment); *United States v. Ecker*, 30 F.3d 966 (8th Cir.), *cert. denied*, 513 U.S. 664 (1994)(civil commitment); *United States v. Ecker,* No. 92-2023 (1st Cir., Summary Affirmance, October 7, 1992)(competency); and *United States v. Ecker*, 923 F.2d 7 (1st Cir.1991)(Indictment). The defendant has filed several petitions for writs of habeas corpus in the District Court to obtain his release: *Ecker v. Carlson*, 93-CV-10630-REK; *Ecker v. Benov*, 00-CV- 40070-GAO; *Ecker v. Winn*, 02-CV-10710-NMG; *Ecker v. Beeler*, 03-CV-40222-REK. None of these have been successful.

rejected each of the defendant's arguments, which are essentially the same arguments presented here.  Contrary to the defendant's assertion in his Memorandum, the First Circuit did not "expressly [leave] open" the question whether this indictment should be dismissed "under different circumstances."  (Memorandum at p. 5).  The court held without qualification that the government is not required to dismiss this indictment. *Id.* at 728.  Thus, under the doctrine of *stare decisis*, then, the issue presented in this motion is foreclosed. *See Eulitt v. Me. Dep't of Educ.,* 386 F.3d 344, 348 (1st Cir.2004) (explaining that "the doctrine of stare decisis precludes the relitigation of legal issues that have previously been heard and authoritatively determined"); *Gately v. Massachusetts,* 2 F.3d 1221, 1226 (1st Cir.1993) (stating that *stare decisis* "renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision").  Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority. *See Sarzen v. Gaughan*, 489 F.2d 1076, 1082 (1st Cir.1973) (explaining that stare decisis requires lower courts to take binding pronouncements "at face value until formally altered"); *cf. Agostini v. Felton*, 521 U.S. 203, 237-38, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (reaffirming that the Court has the prerogative to overrule its own decisions).  The issue decided by the First Circuit in 1996 have not been "cast into disrepute by supervening authority" and in fact is still good law.

      The factual and legal arguments that form the basis for the instant motion to dismiss are incorrect in several important instances: The motion and supporting memorandum are replete with factual errors relating to Mr. Ecker's psychiatric and procedural history.  The memorandum mistakenly relies upon legal authorities relating to pre-trial detention that are inapplicable to Mr.

Ecker, who has been civilly committed and is in federal custody pursuant to 18 U.S.C. § 4246 because of his mental illness and dangerousness. Thus, the legal authorities relied upon are inapplicable to the defendant's status and were distinguished on that basis by the First Circuit in *Ecker*, 78 F.3d at 726-731. Moreover, the First Circuit found the pendency of the instant indictment consistent with the decision of the United States Supreme Court in *Greenwood v. United States,* 350 U.S. 366, 375 (1956). *Ecker,* 78 F.3d at 731. The Court in *Greenwood* described Ecker's exact procedural status and held that "the pending indictment persists" even after the defendant has been found unlikely to recover competency and has been committed as dangerous. *Greenwood,* 350 U.S. at 375; *Ecker,* 78 F.3d at 731. Thus, as the First Circuit held, there is no constitutional or statutory requirement to dismiss this indictment. *Ecker*, 78 F.3d at 726-731.

As the First Circuit recognized, the decision whether to dismiss an indictment is left to the discretion of the prosecutors. *Ecker*, 78 F.3d at 728. The decision to keep this indictment pending continues to serve the important federal concerns of controlling and treating dangerous persons within the federal criminal justice system who are incompetent to stand trial. *See also United States v. Sahhar,* 56 F3d 1026, 1027 (9th Cir. 1995). The release or to transfer of the defendant Ecker to a state mental hospital (not necessarily a secure institution) may result in a greater likelihood that he would be released, and therefore would create a substantial risk of harm to another person or persons. Thus, if the pendency of this indictment serves, among other things, to prevent that transfer, there is an important federal interest to be served by keeping this indictment pending.

As the First Circuit previously recognized, the statute only requires "reasonable efforts"

to do so, not the absolute duty asserted by the defendant[6]. 18 U.S.C. § 4246(d); *Ecker*, 78 F.3d at 730-731. The government is required to reevaluate the defendant annually. 18 U.S.C. § 4247 (e)(B). As part of that assessment, the government is required to determine whether the Commonwealth of Massachusetts will accept the defendant into its custody. To date, Massachusetts has not been willing to do so. The defendant was placed in Massachusetts within the federal medical facility at FMC Devens in Massachusetts from July 13, 1999 until September 2002, when he was transferred to FMC Butner due to his "stalking a female staff member and threatening the Chief of Psychiatry. (*See* Exhibit J to Defendant's Memorandum In Support of his motion, Annual Update dated 2/17/04, page 1 and Declaration of Gary Riggs, M.D. who treated Mr. Ecker at FMC Devens, attached hereto as Exhibit 1 at ¶ 4)[7].

The decision to retain this Indictment is within the discretion of the government. The pendency of this indictment supports the important federal concerns of controlling and treating dangerous persons, as well as the federal prosecutorial interests in the punishment of the defendant for the crime charged. It is not at all clear that a psychiatrist in the future will not find that the defendant has regained competency – as did Dr. Lucking in 2004. The history of the inconsistent findings are sufficient to cause the government grave concern in this case.

---

[6] Contrary to the defendant's assertions, the defendant is and has been receiving treatment for his mental illness. The federal commitment statutes requires the Attorney General to place the defendant in a facility that can accommodate the patient's rehabilitation needs and that will provide appropriate services for his mental health status. 18 U.S.C. § 4247 (C) and (D). Indeed, the defendant is presently being held at the Federal Medical Center in Butner, North Carolina, a facility that specializes in such treatment.

[7] It is well documented that part of Ecker's mental illness is that he forms erotomatic delusions and attachments to females with whom he comes into contact. (See Forensic Evaluation of Robert Lucking, M.D. dated 6/09/05 attached as Exhibit 3 and Riggs Declaration at ¶ 9 with Risk Assessment Panel Report dated July 31, 2000 attached as Exhibit 1).

Therefore, it is not at all unreasonable that this indictment remain pending.

The defendant in his motion asserts that if this Indictment is dismissed that he be transferred to into state custody in the Commonwealth of Massachusetts. The motion goes further and requests this Court to so order. That statement is not correct as a matter of fact or of law and the decision to transfer the defendant into an institution in the Commonwealth of Massachusetts is not before this Court. That decision is within the purview of the Attorney General pursuant to 18 U.S.C. 4246(d) and is subject to the willingness of the Commonwealth of Massachusetts to assume responsibility for the defendant. The mere pendency of this Indictment may have any impact upon that determination. These issues were fully addressed and rejected by the First Circuit in *Ecker,* 78 F.3d at 730-731. This Court is bound by that determination.

The maximum term of imprisonment faced by the defendant is life imprisonment. *United States v. Stokes,* 388 F.3d 21, 28 (1st Cir. 2004), *vacated on other grounds,* 125 S.Ct.1678 (2005), *reinstated,* 2005 WL 2170091 (1st Cir. Sept. 8, 2005; *see also, Custis v. United States,* 511 U.S. 485, 487 (1994). In view of the seriousness of the offense in this case and the defendant's serious past criminal history, it is not at all clear that the defendant would have been sentenced only to the mandatory minimum in this case. Thus, the defendant's assertion that he is being held past the period he would have been incarcerated if convicted is not only wrong it is not relevant to the Court's determination of this motion.

Wherefore, for all the foregoing reasons, the United States requests that the Court to

deny the defendant's Motion to Dismiss Indictment With Prejudice.

        Respectfully Submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   /s/ Mary Elizabeth Carmody
      MARY ELIZABETH CARMODY
      Assistant U.S. Attorney
      U. S. Attorney's Office
      John Joseph Moakley
      United States Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA  02210
      (617) 748–3290

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by ECF/mailing a copy of same in an envelope bearing sufficient postage for delivery to:

    Robert Braceras, Esq.
    Goodwin Proctor, LLP
    Exchange Place
    Boston, MA 02109

This 30th day of December 2005 .

        /s/ Mary Elizabeth Carmody
        _____
        MARY ELIZABETH CARMODY
        Assistant United States Attorney