

**U. S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*

*Federal Medical Center*
*P. O. Box 1500*
*Butner, NC 27509*
*(919) 575-3900*

July 8, 2005

The Honorable Robert E. Keeton
3130 United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210-3002

RE: ECKER, John
    Register Number: 90050-038
    Docket Number:   89-30028-K

Dear Judge Keeton:

In accordance with your Court Order dated March 15, 2005, we have performed a competency study on Mr. Ecker.

Mr. Ecker's evaluators have opined he currently remains not competent to proceed to trial. I have enclosed a report by his evaluators stating their opinion regarding the need to involuntarily treat Mr. Ecker with psychotropic medications in order to restore his competency to proceed to trial. We are recommending judicial oversight as required by the Sell decision. Should the Court rule that Mr. Ecker can be treated with psychotropic medications, we further recommend a full four month period for restoration as outlined in Title 18, U.S.C., Section 4241(d).

If you require additional information or clarification of issues presented in the attached report, our clinicians are available by phone or video conferencing. Unfortunately, our budget does not include funding for travel, therefore, if a clinician's presence in Court is required, we will have to request reimbursement of expenses.

The United States Marshals Service have been contacted for return of Mr. Ecker to your District Court for further legal proceedings.

If we can be of further assistance to the Court in this or other matters, please do not hesitate to contact me.

Respectfully,

*[signature]*

A.F. Beeler, Warden
FCC, Butner (Medical)

cc: Mary Carmody, Assistant United States Attorney
    Owen Walker, Federal Public Defender

FORENSIC EVALUATION
Mental Health Department
Federal Medical Center
Butner, North Carolina

**NAME:** ECKER, John
**REGISTER NUMBER:** 90050-038
**DOCKET NUMBER:** 3-93-298
**DATE OF BIRTH:** 08/05/60
**DATE OF REPORT:** 06/09/05
**DATE SIGNED:** 07/08/05

**IDENTIFYING INFORMATION:** Mr. John Ecker is a 43-year old, single White male, from Wilbraham, Massachusetts. He was admitted to the Mental Health Department of the Federal Medical Center (FMC) in Butner, North Carolina on 04/13/05, as a transfer from the Federal Medical Center (FMC) Devens, Massachusetts related to inmate management issues for stalking a female staff member and threatening the Chief of Psychiatry. Mr. Ecker was originally charged with being a Felon in Possession of a Firearm in the District of Massachusetts in October 1989. Mr. Ecker underwent a psychiatric evaluation for competency/restoration of competency on at least seven occasions during the period from October 1989 to March 1993. Each of the evaluations, with the exception of the evaluation conducted in July 1991, concluded Mr. Ecker was not competent and not likely to be restored to competency. On 04/16/93, Robert Keeton, United States Magistrate Judge for the District of Massachusetts found Mr. Ecker not restorable to competency. In October 1993, Mr. Ecker was committed to the custody of the Attorney General pursuant to Title 18 United States Code, Section 4246 by Paul A. Magnuson, United States District Judge for the District of Minnesota, Third Division. Mr. Ecker has remained in the custody of the Attorney General since that time. On 07/20/01, this case was transferred to the United States District Court for the District of Massachusetts. In an Annual Forensic Update, dated 02/17/04, we opined that Mr. Ecker was competent to stand trial. Mr. Ecker was subsequently returned to court for the processing of his legal charges. Shortly after leaving FMC Butner, information was received from the AUSA, Mary Carmody, that Mr. Ecker intended to use a delusional belief as his defense. In an Addendum to the Annual Forensic Update, dated 06/17/04, we opined that with the additional information provided by Ms. Carmody, that Mr. Ecker's competency was in doubt and another competency evaluation was indicated. Mr. Ecker was apparently seen for a forensic evaluation by Dr. Rogers at the request of his attorneys, Robby

Page 1 of 9

Brashear and Neil Smith. It appears that evaluator found Mr. Ecker was not competent to stand trial. In a Procedural Order dated 03/15/05, Judge Keeton ordered that Mr. Ecker be placed back into federal custody for another competency evaluation. Mr. Ecker is represented by Robby Brashear and Neil Smith, and the Assistant United States Attorney assigned to the case is Mary Carmody.

**COLLATERAL DATA**: The following documents were reviewed in the preparation of this report: Medical Record from Correctional Medical Services at Essex County Correctional Facility (ECCF), dated 06/09/04 to 03/10/05.

**DATES OF CONTACT AND PROCEDURES ADMINISTERED**: During this evaluation, Mr. Ecker was seen individually by Robert G. Lucking, M.D., Staff Psychiatrist, with psychological consultation provided by Angela Walden-Weaver, Ph.D., Staff Psychologist. Other members of the Forensic Team, Correctional, and Mental Health Staff had the opportunity to observe his behavior throughout the course of his evaluation. Their observations and comments were considered prior to the preparation of this report. Mr. Ecker also underwent a routine physical examination and laboratory studies. The following procedures were administered during this evaluation:

Clinical Interviews (ongoing)
Behavioral Observation (ongoing)
Physical examination (04/13/05)

**BACKGROUND INFORMATION**: Mr. Ecker has voluminous records from his extended stay in the Bureau of Prisons. A brief review of the information felt to be pertinent was presented in the Annual Forensic Update, dated 02/17/04. Therefore, this information will not be repeated herein. For questions regarding background or historical information, the reader is referred to this Annual Forensic Update and the others contained in the record.

The record from ECCF revealed he was admitted there on 06/06/04. On 06/25/04, Mr. Ecker met with the psychiatrist who discontinued the risperidone Consta and placed him on a low dose of quetiapine (100 mg). By the end of September 2004, notes began to appear in the record indicating he was again psychotic. The response to this was to increase the quetiapine to 150 mg daily. In January 2005, the record indicates Mr. Ecker was showing increasing psychotic symptoms and was both expressing the psychotic beliefs (others are tampering with his food, he was being poisoned by

toxins) and acting upon them. An incident report from the correctional staff was included. It indicated Mr. Ecker had been on a hunger strike.

**COURSE IN INSTITUTION:** Mr. Ecker was initially screened in the Receiving and Discharge Department where he was seen by medical services, psychiatric/psychological screening, and clearance by unit management. Due to his refusal to comply with the admission and screening procedure, he was placed in the 1-E restricted movement unit where he remained for approximately one week. At this time, he complied with the admission requirements and was released to an open mental health housing unit. He disclosed his medical history and underwent a routine physical examination and laboratory studies. Medical history was non-contributory with the exception of stable gastroesophageal reflux disease and stable asthma, now without medication. Physical examination was felt to be normal for an individual his age. Vital signs revealed a blood pressure of 126/79, pulse was 75 and temperature and respirations were within the normal range. At the time of admission, Mr. Ecker was not taking any psychotropic medication.

Routine laboratories performed as part of the admission procedure revealed the following: PPD on 04/21/05 was negative; urinalysis was within normal limits; serology for syphilis was negative; complete blood count was within normal limits; HIV antibody was negative; thyroid studies were within normal limits; blood chemistries were within normal limits.

The mental status examination at the time of the initial evaluation revealed a 43-year old, White male who looked his stated age. Dress and grooming were adequate. Psychomotor activity was within the normal range. Eye contact was felt to be normal. Facial expression was responsive. Attitude toward the examiner was guarded, suspicious, and defensive. He was oriented to person, place, time, and circumstances. Cognitive functions were not formally assessed, but appeared to be adequate to informal observation and educational level. Affect was appropriate to the content of the conversation. Range of affect was adequate. Mood was euthymic. Mr. Ecker denied a subjective sense of depression and denied the neurovegetative signs of depression. He denied mood swings. He denied mania/hypomania and associated signs. There were no speech or language deficits apparent. He denied hallucinations and delusions. At the time of the initial screening, there was no evidence of an overt thought disorder of content. No delusional material was evident during the initial screening. There was no evidence of a thought disorder of form. Conversation was linear, logical, and goal

oriented. He denied suicidal, homicidal, or aggressive thoughts, plans or intent.

At some time after his transfer from FMC Butner, Mr. Ecker began to refuse the long acting antipsychotic medication, risperidone Consta, with which he had been treated. This resulted in a return of his paranoid delusional system. Mr. Ecker presents himself in essentially the same manner he did when actively psychotic at the time of his admission to FMC Butner in September 2002. Mr. Ecker is again voicing his belief that his current difficulties originate from 1992 when he was housed at USMCFP and three women disappeared. Their disappearance involved the U.S. government and the CIA. As a result of his knowledge, he was transferred to FMC Rochester after telling several of the psychiatrists there he was wrongfully found incompetent and civilly committed. As the result of his commitment, some people were catapulted to the top and others were victimized. In 2002, he was informed by a colonel from the NSA that his information was accurate and the investigation files were ordered sealed by President Clinton, Attorney General Reno, and President Bush. Mr. Ecker also presents his belief that there were illegal activities which were ongoing in the state facility at Middleton, Massachusetts and at the Oklahoma Transfer Center (OKTC). While he did not describe the illegal activities that were occurring, he indicated they involved drugs, prostitution, pornography, and staff bringing in contraband and conducting raves. As the result of his knowledge of these activities, he has been targeted at the facilities where he was housed. At both Middleton and OKTC, his food has been poisoned with napalm and toxic paint has been used in the institution to poison him. He has written multiple letters to government officials (Governor of Massachusetts) and law enforcement agencies (FBI and ATF) to inform them of the illegal activities and request their help to have him removed from incarceration. He has also attempted to contact these agencies on the telephone.

Mr. Ecker has also developed an erotomanic attachment to a female staff member at this institution. This is a pattern which develops whenever he is psychotic and has required his transfer from multiple institutions for the protection of the female staff member. Mr. Ecker now firmly believes he is going to marry the female staff member and is making demands of the administration to ensure this will occur. It appears a similar situation developed while at Middleton with a female staff member at the Canadian Embassy in Atlanta with whom he had telephone contact. When the female makes it clear they are not interested in a relationship with him and no longer want any contact with him, he

believes the "authorities" have "gotten to her" and are threatening and intimidating her into breaking off the "relationship" and refusing to marry him.

**IMPRESSIONS:** According to the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR)*, we have diagnosed Mr. Ecker as follows:

Axis I:   Schizophrenia, Paranoid Type, Continuous, 295.03
Axis II:  No Diagnosis, V71.09
Axis III: Gastroesophageal Reflux Disease by History
          Asthma by History
Axis IV:  Psychosocial and Environmental Problems: Problems
              Related to Interaction with the Legal System/Crime
          Arrest for the Instant Offense
Axis V:   Global Assessment of Functioning Scale: 90

Mr. Ecker's diagnosis is unchanged from that given in the Annual Forensic Update and will not be reviewed herein. The reader is referred to the Annual Forensic Update, dated 02/17/04 for the description and explanation for the above diagnosis.

In regard to the issue of competency to stand trial, it is the opinion of the Forensic Team that Mr. Ecker is not competent to stand trial. Mr. Ecker possesses an adequate and factual understanding of the charges against him. He has an adequate understanding of the pleas available to him and the consequences of each. Mr. Ecker understands the seriousness of his legal difficulty at this time. He understands the roles and functions of the courtroom personnel. He exhibits a reasonable understanding of the adversarial nature of the courtroom proceedings. Mr. Ecker understands the procedure for challenging witnesses. Mr. Ecker appears to have delusional beliefs about his attorney. There is currently a well developed and highly organized delusional system present which prevents him from working with his attorney to plan a legal strategy. He appears to have incorporated his attorneys into this delusional system and he is attempting to have them dismissed from representing him. As a result, Mr. Ecker does not have the ability to engage in a forthright and candid relationship with his attorney, as they now appear to be included in the delusional system. At this time, it appears Mr. Ecker has the capacity to follow the proceedings in the courtroom and to assist his attorney during the trial.
Mr. Ecker's decisional capacity is severely impaired, as it is based upon delusional beliefs.

The ability to understand the nature and consequences of the proceeding and to assist properly in his defense requires that Mr. Ecker possess the required minimal decisional capacity. Decisional capacity can be seen as having four basic elements. First, understanding (to achieve a mental mastery of the meaning or idea by knowing what is conveyed by the words used). Second, appreciation (to judge or evaluate the worth, merit, quality, or significance of). Third, reasoning (the ability to trace out the implications of a combination of facts or supposition). Fourth, the ability to express a choice.

While Mr. Ecker possesses and exhibits a clear understanding of the charges against him, the roles and functions of the courtroom personnel, and court procedures; he lacks the other required elements to be considered necessary for adequate decisional capacity. His appreciation, reasoning, and ability to express a choice are based upon paranoid delusional beliefs. Because he is basing his judgement and decisions upon these delusional beliefs he lacks the decisional capacity required to assist his attorneys.

Mr. Ecker also does not appear to be capable of rationally waiving his right to trial and other constitutional protections as these decisions would also be based upon his delusional beliefs. It is also our opinion Mr. Ecker does not have the capacity to testify adequately in his own behalf if it is decided that he should do so, as his testimony would be based largely on his delusional beliefs. In summary, it is the opinion of the Forensic Team that while Mr. Ecker is able to understand the nature and consequences of the proceedings against him, he is unable to assist properly in his defense.

Mr. Ecker was not treated with any psychotropic medication; he refused to be treated. We are, therefore, requesting a judicial order for the involuntary treatment of Mr. Ecker with antipsychotic medication for the purpose of restoring him to competency as outlined in the Supreme Court Sell decision.

The first prong, whether important governmental interests are at stake in bringing to trial an individual accused of a serious crime, is strictly a legal issue.

The second prong asks if treatment is substantially likely to restore the defendant to competency and are there less intrusive alternatives to achieve the same results. Mr. Ecker suffers from a psychotic disorder, Schizophrenia, Paranoid Type. This disorder produces psychotic symptoms which currently are rendering him incompetent to stand trial. Treatment with

antipsychotic medication is the accepted and appropriate treatment for an individual with the diagnosis of Delusional Disorder. It is likely that the antipsychotic medication would have to administered involuntarily. Throughout his stay in the BOP, Mr. Ecker has refused to take antipsychotic medication on a voluntary basis. When he has agreed to oral medication he has not been compliant with the dosage ordered, surreptitiously disposed of the medication, agreed to take an ineffective dose, or simply refused to take it. Additionally, Mr. Ecker does not believe he has a mental illness and, therefore, does not require psychotropic medication. When he left FMC Buther in May 2004, he was receiving long acting injectable antipsychotic medication. However, at some time shortly after leaving he refused to take the injection. Mr. Ecker has a positive response when treated with long acting injectable antipsychotic agents with a marked decrease in his psychotic symptoms and significant improvement in his delusion-based reasoning.

Antipsychotic medication can produce beneficial clinical effects such as decreasing auditory hallucinations, and decreasing delusional beliefs. These are the psychotic symptoms which render Mr. Ecker incompetent to stand trial. By decreasing auditory hallucinations and delusional beliefs, this decreases the influence they have on decisions, judgements, and perceptions. This allows the client to make reasonable, rational, reality based decisions regarding the processing of his legal charges. Mr. Ecker shows evidence of paranoid delusional beliefs as noted in the above report. Antipsychotic medication can also decrease cognitive disorganization. By decreasing cognitive disorganization, improving communication and restoring more normal thought processes, antipsychotic medication can improve the level of communication between the client and his attorney. Therefore, we opine that there is substantial probability that Mr. Ecker can be restored to competency by receiving treatment with antipsychotic medication. Mr. Ecker's psychotic symptoms have persisted for an extended period both prior to his admission and during his stay at this facility. These psychotic symptoms are chronic and persistent. It is our opinion that Mr. Ecker is unlikely to improve in the foreseeable future without treatment with antipsychotic medication, which he is now refusing on a voluntary basis. Therefore, we offer the opinion that involuntary medication is necessary to restore Mr. Ecker's competency to stand trial.

Alternative, less intrusive treatments which are available are unlikely to be effective in achieving the same results. First, Mr. Ecker does not have any insight/understanding that he has a mental illness. He, therefore, does not believe he is in need of

treatment of any type. He is unlikely to engage in any form of psychotherapy (cognitive-behavioral, group, behavioral, interpersonal). Furthermore, while there is evidence in the psychiatric literature that some forms of psychotherapy are beneficial to an individual with psychotic symptoms, this is as an adjunctive treatment to the antipsychotic agents to improve such things as insight, compliance, or coping skills. There is no evidence that psychotherapeutic techniques alone are an effective alternatives for antipsychotic agents.

The third prong asks if the treatment is substantially likely to have serious side effects which would interfere with the defendant's ability to assist his attorney in conducting his defense. As with all medications, antipsychotic medication has side effects. A few of the side effects of the antipsychotic medications are serious and others are relatively benign and have no long term effects. As a matter of course, these side effects are monitored and routinely managed by psychiatrists throughout the country in daily clinical practice. The risks and benefits of the particular medications are considered prior to initiating treatment. If serious side effects emerge, they are managed in a clinically appropriate manner. Since the mid 1990s, an increasing number of antipsychotic medications have been developed which have more favorable side effect profiles and are better tolerated by the individual receiving them. One of these newer antipsychotic medications (risperidone Consta, with which he has been previously treated and had a good response) is now available in an injectable form and can be administered on an involuntary basis. Maximal efforts are made to gain the cooperation of the individual to take these medications orally, thus minimizing the adverse effects to the individual. We therefore opine that the proposed treatment would be substantially unlikely to have serious side effects which would interfere significantly with his ability to assist his attorney in preparing and conducting his defense.

The fourth prong asks if treatment with antipsychotic medications is medically appropriate. The standard and accepted treatment for anyone with the diagnosis of Schizophrenia, Paranoid Type would involve the prescription of antipsychotic medication. Mr. Ecker has not been diagnosed with medical illnesses which require treatment with medications. There is no contraindication to resume treatment with antipsychotic medications which have resulted in the restoration of his competency to proceed to trial in the past. Therefore, we offer the opinion that administering the proposed treatment with antipsychotic medication is medically and clinically appropriate.

In summary, we continue to offer the opinion that there is substantial probability that Mr. Ecker's competency can be restored with a period of treatment with antipsychotic medication. We, therefore, ask that the Court make a judicial decision regarding the appropriateness of the prescribed course of treatment as outlined above based upon the findings in Sell v. United States.

Mr. Ecker is ready to proceed with the processing of his legal charges. Mr. Ecker has been showing increasing evidence of psychotic decompensation, particularly over the last several weeks with increasing paranoia. The intensity of his delusional beliefs has increased and he now believes that toxic substances has been put into his food. As a result of these beliefs, Mr. Ecker has been making verbal threats of physical aggression against staff members. Care and caution should be taken during transport due to his substantial history of aggressive and violent behavior when psychotic. There are no specific medical needs which require special follow-up. There are no special precautions needed for travel. Mr. Ecker requires follow-up with psychological services to monitor his psychological status. Mr. Ecker is currently not on any psychotropic medication.

Robert G. Lucking, M.D.
Staff Psychiatrist
Mental Health Department
Federal Medical Center
Butner, North Carolina

Angela Walden-Weaver, Ph.D.
Staff Psychologist

RGL:aww/deh