UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.

JOHN LEONARD ECKER,

                    Defendant.

Criminal No. 89-30028-NMG-1

## MEMORANDUM IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR TRANSFER TO THE CUSTODY OF MASSACHUSETTS

Defendant John Leonard Ecker submits this memorandum in support of his motion for a transfer to the custody of the Commonwealth of Massachusetts.

### INTRODUCTION

For the last sixteen years, the federal government has shuffled Mr. Ecker among federal prison facilities, transferring him to facilities in North Carolina, Missouri, Massachusetts, Oklahoma, and Minnesota. The facilities that house Mr. Ecker (most of the time) are formally deemed "Federal Medical Centers," but Mr. Ecker is a prisoner, with all the restrictions and deprivations that term implies, and despite the fact that he was never convicted of a crime, Mr. Ecker has been in federal custody since 1989, not because he has been tried and convicted of a crime, but because he suffers from a persistent, and possibly permanent, mental illness. It is well settled, however, that the Attorney General must exert all reasonable efforts to transfer custody of a person held under 18 U.S.C. § 4246 to a suitable state facility in his home state. The federal government simply may *not* retain custody of a person like Mr. Ecker in perpetuity. Yet that is precisely what the federal government has done here. Mr. Ecker is the proverbial

forgotten man, never convicted yet locked up by the federal government without any efforts being made to transfer him to a state facility.

Mr. Ecker and his family want nothing more than treatment near his home in Massachusetts where Mr. Ecker can receive visitors and his care can be monitored. The Commonwealth of Massachusetts has the experience and capability to confine and treat Mr. Ecker. Indeed, it is well within the Commonwealth's inherent police powers, as well as the clear provisions of 18 U.S.C. § 4246, for it to assume custody of mentally ill residents like Mr. Ecker. Mr. Ecker is *not* asking to be released, he is asking simply that the Court order the government to comply with § 4246. Because the Attorney General has failed its duty to transfer Mr. Ecker to the custody of Massachusetts, Mr. Ecker comes to this Court for relief.

## STATEMENT OF FACTS

For the last sixteen years, without trial or conviction, Mr. Ecker has been shuffled between the Federal Medical Centers ("FMC") at Ft. Devens, Massachusetts; FMC-Butner, North Carolina; FMC-Springfield, Missouri; FMC-Rochester, Minnesota; and the federal transfer station in Oklahoma. He also has been incarcerated periodically in Massachusetts state prisons, most recently in Essex County, while in Massachusetts for court appearances.

In March 1993, at FMC-Rochester, Minnesota, the Bureau of Prisons certified Mr. Ecker mentally incompetent to stand trial and unlikely to gain competency. *See United States v. Ecker*, 30 F.3d 966, 967 (8th Cir. 1994) ("*Ecker I*"); *Pre-Release Evaluation*, attached hereto as Exhibit ("Ex.") A. Because of his continuing incompetence, Mr. Ecker could no longer be held by the short-term pretrial incarceration provisions of 18 U.S.C. § 4241. On April 16, 1993, this Court (Keeton, J.) found him incompetent to stand trial and, pursuant to 18 U.S.C. § 4246, directed that he undergo an evaluation to determine whether, due to his mental condition, he posed a danger to

persons or property. *See United States v. Ecker*, No. 89-30028-K (D. Mass. April 16, 1993)

(Order), attached hereto as Ex. B; *Pre-Release Evaluation*, Ex. A. The First Circuit affirmed,

stating that "[Mr.] Ecker had not responded to treatment and had little prospect of regaining

competency." *See United States v. Ecker*, No. 93-1436 (1st Cir. June 28, 1993) (Order of the

Court), attached hereto as Ex. C. Accordingly, on October 19, 1993, Mr. Ecker was committed

to the custody of the Attorney General as a mentally ill and dangerous person pursuant to § 4246.

*See United States v. Ecker*, 78 F.3d 726, 727 (1st Cir. 1996) ("*Ecker II*"). Mr. Ecker appealed

his commitment to the U.S. Court of Appeals for the Eighth Circuit, which affirmed the

commitment order. *Ecker I*, 30 F.3d at 969-71. More than thirteen years later, Mr. Ecker is still

being held under § 4246.

    In 1995, Mr. Ecker moved to dismiss the federal Indictment. Judge Keeton denied the

motion. *United States v. Ecker*, No. 89-30028-REK (D. Mass. July 14, 1995) (Memorandum and

Order), attached hereto as D; *see also Ecker II*, 78 F.3d. at 728. The First Circuit affirmed, but,

notably, the court emphasized that, under §§ 4241 and 4246, *the Attorney General had a duty to

place Mr. Ecker in Massachusetts if it was possible to do so. Ecker II*, 78 F.3d at 730-31. The

Bureau of Prisons apparently inquired into transferring Mr. Ecker to Massachusetts in 1996, but

Massachusetts refused to accept a transfer while the federal Indictment was pending. *Id.* at 727.

    On July 14, 2005, the Court held a hearing to assess Mr. Ecker's competency and to

consider the government's request that Mr. Ecker be forcibly medicated to promote his

competency for trial. At the hearing, Dr. Lucking, Mr. Ecker's treating psychiatrist at FMC-

Butner, NC, testified that Mr. Ecker was not competent to stand trial, nor was he likely to regain

competency in the future, regardless of his medication. Transcript of Status Conference at 43,

45-46, *United States v. Ecker*, No. 89-30028-REK (D. Mass. July 14, 2005), attached hereto as

Ex. E. Though the government argued that Mr. Ecker should be forcibly medicated to return him to competency, *Id.* at 46-47, Dr. Lucking acknowledged that forced medication had been unable to restore Mr. Ecker's competency in the past and would not necessarily restore Mr. Ecker's competency in the future. *Id.* at 47-49, 58-59. Indeed, the government's own psychiatrist conceded that Mr. Ecker was long-term incompetent with little likelihood of becoming competent, testifying: "I have some questions about whether his competency can be restored ..." *Id.* at 49.

Upon conclusion of Dr. Lucking's testimony, the Court denied the government's request to medicate Mr. Ecker, noting that Mr. Ecker is not "substantially likely" to become competent as a result of forced medication. *Id.* at 67. The Court acknowledged that Mr. Ecker is long term incompetent with no hope of regaining competency in the near future, ruling: "Now, I also find that Mr. Ecker is not now competent to stand trial, and that it is my present finding that it is not foreseeable that he will be likely to become competent to stand trial anytime in the near future, so it is impossible in those circumstances for me to schedule a trial." *Id.*

On October 24, 2005, Mr. Ecker moved the Court to dismiss the indictment pending against him with prejudice and to order the federal government to transfer Mr. Ecker to Massachusetts. On March 17, 2006, the Court ordered that the Indictment be dismissed. *U.S v. Ecker*, No. 89-30028-NMG (D. Mass. March 17, 2006) (Memorandum and Order). Importantly, the Court did not expressly rule on Mr. Ecker's motion for a transfer, although the Court contemplated that such a transfer would possibly result: "Ecker will continue to be held in custody pursuant to 18 U.S.C. § 4246 pending possible transfer to a facility in Massachusetts." *Id.* at 8. Nevertheless, Mr. Ecker remains confined in the custody of the Attorney General at FMC-Springfield, Missouri, where he was recently relocated (yet again). Since the dismissal of

4

the indictment, counsel for Mr. Ecker is aware of no efforts by the federal government to place

Mr. Ecker in a Massachusetts facility, despite the mandate of § 4246 and repeated requests by

Mr. Ecker and his mother.

In complete disregard of § 4246, the government has done nothing to transfer Mr. Ecker

to Massachusetts.  During his sixteen years in federal custody, Mr. Ecker's illness has gotten

worse, not better.  Treatment at a Massachusetts hospital — where he would remain safely in

custody and receive improved treatment — is long overdue.

**ARGUMENT**

This Court should order the Attorney General to transfer Mr. Ecker to a Massachusetts

mental health facility.  Such a transfer is required by both 18 U.S.C. § 4246 and the Fifth

Amendment of the U.S. Constitution.  Without assistance from this Court, Mr. Ecker will

continue to be shuffled between federal prisons, without receiving consistent, quality care.  The

Constitution does not abandon its citizens — especially the mentally ill — so easily.

**I.    18 U.S.C. § 4246 REQUIRES THE ATTORNEY GENERAL TO TRANSFER MR. ECKER TO A MASSACHUSETTS MENTAL HEALTH FACILITY.**

Pursuant to the plain language of § 4246, the Attorney General is required to transfer Mr.

Ecker to Massachusetts custody.  A person whose mental illness makes him dangerous shall be

committed to the Attorney General's custody.  *See* 18 U.S.C. § 4246(d).  But then:

> The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment.  The Attorney General shall make all reasonable efforts to cause a State to assume such responsibility…. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.  *Id.*

Section 4246 is unambiguous.  Congress intended that the states, *not* the federal

government, care for the mentally ill.  *United States v. Chairse*, 18 F. Supp.2d 1021, 1033

(D. Minn. 1998) (citing *United States v. Wheeler*, 744 F. Supp. 633, 640 (E.D. Pa.1990)).

Courts universally have interpreted § 4246 as prioritizing the states' roles in managing

mental health treatment. The Fourth Circuit recognized the importance of transferring a

person to state custody under § 4246, stating: "Congress designed procedures to ensure

that every attempt is made to find a state alternative to federal care of the mentally ill."

*United States v. Charters*, 829 F.2d 479, 486 (4th Cir. 1987), *rev'd on other grounds*, 863

F.2d 302 (4th Cir. 1988)). The court explained that "the federal government is under a

continuing obligation to make efforts to find a state placement for the patient." *Id.* at

487. Similarly, in *Cook v. Ciccone*, the court found that a person with a permanent

mental illness being held in federal custody pursuant to § 4246 "should be turned over to

the state of his domicile to be confined in a state hospital if hospitalization is called for."

*Cook v. Ciccone*, 312 F. Supp. 822, 824 (W.D. Mo. 1970) (quoting a report on §§ 4244-

4248 by the Judicial Conference of the United States, dated July 30, 1945); *see also*

*Kirkwood v. Harris*, 229 F. Supp. 904, 905 (W.D. Mo. 1964) (finding that a person with a

permanent mental illness being held in federal custody pursuant to § 4246 "should be

transferred to an appropriate state or other suitable institution."). Indeed, § 4246 makes

no provisions for the treatment of mental illness, because it presumes that treatment is the

role of the states. *United States v. Walker*, 335 F. Supp. 705, 708 (N.D. Cal. 1971).[1]

---

[1]    Long term federal custody under § 4246 should only occur in rare cases where a person has no permanent
residence or there is no state willing to accept the person for confinement. *See Greenwood v. United States*,
350 U.S. 366, 374 (1956); *see also United States v. Baker*, 807 F.2d 1315, 1324 (6th Cir. 1986) (holding that
ongoing federal custody pursuant to § 4246 is to be used "only in those rare circumstances where a person has
no permanent residence or there are no State authorities willing to accept him for commitment."). Mr. Ecker
has a state of residence: Massachusetts is his home state, and his mother continues to reside there. Further,
there is no evidence that Massachusetts refuses to accept custody of Mr. Ecker, especially now that the
Indictment has been dismissed.

Mr. Ecker's odyssey between federal prisons must end. Mr. Ecker needs

appropriate treatment. As in *Charters*, *Cook*, and *Kirkwood*, § 4246 requires that the

Attorney General transfer Mr. Ecker to a state facility so that he can receive treatment

near his family. Indeed, in this case itself, the First Circuit recognized that § 4246

"imposes a duty on the Attorney General to attempt to place Ecker within the state [of

Massachusetts]." *Ecker II*, 78 F.3d at 731. Despite the clarity of § 4246 *and* the First

Circuit's ruling, the Attorney General has refused to transfer Mr. Ecker to Massachusetts.

This Court is the last resort: the Court must order the government to follow the law; the

Court must order the government to transfer Mr. Ecker to the custody of Massachusetts.[2]

## II.    MR. ECKER'S INDEFINITE FEDERAL CONFINEMENT VIOLATES HIS CONSTITUTIONAL RIGHT TO LIBERTY AND DUE PROCESS.

Mr. Ecker's Fifth Amendment rights cannot be ignored merely because he is

mentally ill. By any measure, sixteen years is not a reasonable period for the government

to incarcerate this man without trial or proper treatment. In *United States v. Sahhar*, the

Ninth Circuit upheld § 4246 as constitutional because its provisions, while allowing for

indefinite federal confinement of a mentally ill person, *are narrowly tailored to permit*

*indefinite federal confinement only in rare circumstances where a state cannot itself*

*assume custody*. *United States v. Sahhar*, 56 F.3d 1026, 1029-30 (9th Cir. 1995)

---

[2]    In the past, the government has ignored the plain meaning of § 4246 and argued that transferring a mentally ill person to a state facility would lead to a greater likelihood of release or escape. Government's Opposition to the Defendant's Motion to Dismiss with Prejudice, *United States v. Ecker*, No. 89-30028-NMG (D. Mass. Dec. 30, 2005). This argument has no basis in fact and is irrelevant to the Attorney General's responsibilities under § 4246. Mr. Ecker is a man with a limited criminal record, no federal convictions, and a serious mental illness. There is nothing about his history or his condition that suggests that only the federal government is capable of detaining him. Mr. Ecker is not so remarkable or ill that Massachusetts is unable to care for him. Massachusetts has a long history of competence in dealing with the dangerous and the mentally ill; indeed, the Commonwealth's history is longer than that of the federal government in this regard. Moreover, there is nothing in 18 U.S.C. § 4246 that allows the federal government to retain custody of a person in Mr. Ecker's situation simply because the federal government has an unsupported belief that such person is "too dangerous" for state custody.

7

(emphasis added). The court held that § 4246 "does not authorize wholesale, continuous federal detention of dangerous persons who have once been charged with a federal crime." *Id.* at 1030. Indeed, the Supreme Court has questioned the validity of § 4246 to the extent that it is interpreted to allow indefinite federal confinement. *Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (holding that there is a violation of the Due Process Clause when a person is held without trial for "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."); *see also Walker*, 335 F. Supp. at 708-709 ("Because of these constitutional problems, courts have attempted to read a 'rule of reason' into Section 4246. This rule states that commitment under this section is 'temporary' and the accused cannot be held for an 'unreasonable period of time.'") (*citing Royal v. Settle*, 192 F. Supp. 176 (W.D. Mo. 1959); *United States v. Jackson*, 306 F. Supp. 4 (N.D. Cal. 1969)).. Notably, the *Walker* court considered the federal imprisonment of a mentally ill person for a year to be "unreasonable."

Here, unlike the defendant in *Sahhar*, there is *no* evidence that Massachusetts is unwilling or unable to accept Mr. Ecker, especially now that the Indictment has been dismissed. There likewise is *no* evidence that the government has made any effort since the dismissal of the indictment to transfer Mr. Ecker to Massachusetts.

The Attorney General's failure to comply with § 4246 by not attempting to transfer Mr. Ecker to Massachusetts custody is a violation of his Constitutional right to liberty and due process under the Fifth Amendment. Mr. Ecker's sixteen-year confinement, under any standard, is neither temporary nor reasonable; Mr. Ecker's

continued confinement violates § 4246 , the Constitution, and our fundamental principles

of justice.

## III.    THIS COURT HAS THE AUTHORITY TO ORDER THE ATTORNEY GENERAL TO TRANSFER MR. ECKER TO A MASSACHUSETTS MENTAL HEALTH FACILITY.

This Court has the authority to order the Attorney General to transfer Mr. Ecker.

*See United States v. Crawford*, 165 F.3d 912, 1998 WL 792224, at *4 (4th Cir. 1998)

(upholding a district court's order that the Attorney General transfer custody of a

mentally ill person held under § 4246 to a state facility); *Harrison v. Settle*, 151 F. Supp.

372, 376 (W.D. Mo. 1957) (ordering a mentally ill person held under § 4246 released

from the Attorney General's custody because he was no longer mentally incompetent).

Not only does this Court have the authority, but appeal to this Court is the only avenue

available to Mr. Ecker to enforce § 4246. The government has made no effort to transfer

Mr. Ecker for the last seven years. Without a court order, the Attorney General may

never transfer Mr. Ecker; without an order, the government may never comply with

§ 4246.

Finally, Mr. Ecker also asks this Court to order the Attorney General to provide

the Court and counsel with monthly progress reports of its efforts to transfer Mr. Ecker to

a Massachusetts hospital. Without such reports, there can be no assurance that any

efforts will be made. Mr. Ecker has waited for the government to abide by the law for

long enough.

## CONCLUSION

For sixteen years, the government has shuffled Mr. Ecker from one federal prison

to the next. Mr. Ecker now simply asks that the Attorney General comply with the law

and transfer him to the custody of the Commonwealth of Massachusetts so that he can

receive treatment in an appropriate mental health facility in his home state.  For the

foregoing reasons, Mr. Ecker requests that his motion for such a transfer be allowed.


                                   Respectfully submitted,

                                   JOHN LEONARD ECKER

                                   By his attorneys,



                                   /s/ Roberto M. Braceras
                                   Roberto M. Braceras (BBO #566816)
                                   Neil T. Smith (BBO #651157)
                                   GOODWIN PROCTER LLP
                                   Exchange Place
                                   Boston, MA  02109
                                   (617) 570-1000

DATED:  September 20, 2006


                      CERTIFICATE OF SERVICE

        I, Neil T. Smith, counsel for John Leonard Ecker, hereby certify that on September 20,
2006, a true copy of the above document was served upon Assistant U.S. Attorney Carmody by
ECF/mailing.

                                   /s/ Neil T. Smith

                                   Neil T. Smith



LIBA/1708912.3




                              10