# EXHIBIT A

Case 1:89-cr-30028-NMG    Document 197-2    Filed 09/21/2006    Page 1 of 7

FEDERAL MEDICAL CENTER
ROCHESTER, MINNESOTA

PRE-RELEASE EVALUATION

NAME: ECKER, JOHN                                REG. NO: 90050-038

DOB: ~~████████~~                        DATE OF DICTATION: 03/31/1993

**IDENTIFYING DATA:** Mr. Ecker is a 32-year old, single, white male, who was admitted to the Federal Medical Center (FMC), Rochester, Minnesota, on August 7, 1992. He was transferred from the United States Medical Center for Federal Prisoners (USMCFP), Springfield, Missouri, for continuing evaluation and treatment under Title 18, United States Code, Section 4241(d). Mr. Ecker had been evaluated for competency/restoration of competency five previous times within the Federal Bureau of Prisons (twice at the Federal Correctional Institution (FCI), Butner, North Carolina, and three times at USMCFP, Springfield, Missouri) since his arrest on October 30, 1989, for a firearms violation (Felon in Possession of a Weapon) under Title 18, United States Code, Section 922. This was his first federal offense. All of these evaluations except for the evaluation of July 2, 1991, concluded that he was not competent to stand trial. The Court, however, after all of the evaluations, found that he was not competent to stand trial. He was evaluated twice while at FMC, Rochester. The evaluation of November 30, 1992, concluded that Mr. Ecker was not competent to stand trial; an additional 120 days for restoration of competency was granted under Title 18, United States Code, Section 4241(d)(2)(a). The evaluation of March 23, 1993, concluded that Mr. Ecker is not likely, in the foreseeable future, to attain the capacity for trial to proceed. On or about April 16, 1993, Judge Magistrate Robert Keeton, United States District Court, District of Massachusetts, found Mr. Ecker not restorable to competency to stand trial.

**PSYCHIATRIC AND CRIMINAL HISTORY:** Mr. Ecker was first hospitalized as a 14-year old in 1974. Northampton Hospital (Massachusetts) reports indicate that he had constructed a wick for a fire bomb in the gas tank of a neighbor's car and also threatened to obtain a gun and kill the neighbor and the neighbor's father. He was hospitalized for two months at the McLean Hospital (Massachusetts) and was diagnosed as having Schizophrenia, Childhood type. He was then transferred to the Northampton Hospital and escaped within one day. No diagnosis was made at that time, but a diagnosis of Explosive Personality was made when the patient was returned to Northampton Hospital for a competency evaluation in early 1975.

ECKER, JOHN
REG. NO.: 90050-038
DOB: ~~████████~~
FMC, ROCHESTER
PAGE 1



EXHIBIT C

In August of 1979, Mr. Ecker was charged with Assault and Battery with a Dangerous Weapon. Mr. Ecker allegedly attacked a man with a hammer after finding his girlfriend, whom he had reportedly been dating for five years, in bed with the same man. The patient was then evaluated at Northampton Hospital and was diagnosed as having Antisocial Personality Disorder. He was convicted of the charge of Assault and Battery with a Dangerous Weapon in 1982 and given a ten year sentence. His parole was revoked, in January of 1984, after he left a threatening and obscene message on his female parole officer's answering machine. Mr. Ecker was also concurrently sentenced in September of 1984, for three years on an Arson conviction in Baltimore, Maryland. He was discharged from the Massachusetts Correctional System in September of 1988. Between 1984 and 1988, Massachusetts correctional records indicate that Mr. Ecker was committed twice to the Bridgewater (Massachusetts) Hospital while incarcerated.

In November of 1989, Mr. Ecker was arrested for violation of Title 18, United States Code, Section 922 (Felon in Possession of a Weapon). In November of 1989, the patient was admitted to the Mental Health Unit of FCI, Butner. Two competency evaluations, dated January 26, 1990, and July 13, 1990, were completed while he was there. While at Butner, the patient corresponded with a female college student whom he had met while attending Western New England College. This student requested FCI, Butner to not allow Mr. Ecker to send her any more letters; this request was honored by that institution. In addition, after brief contact with a female case manager at Butner, the patient tried to develop a romantic relationship with her. Mr. Ecker's letter to the case manager, dated July 7, 1990, included the following: "Lastly, I will probably be leaving you. I will soon miss these long summer nights in North Carolina. For they are forever, and soon it shall be for this experience. I love you, sincerely, Leonard ("Lenny")."

In August of 1990, Mr. Ecker was ordered not to be returned to FCI, Butner, based on the following statement in the July 13, 1990, report: "Lastly, it is recommended that Mr. Ecker not be returned to this facility. There is serious concern for the safety of the female staff member [the case manager] that he has fixated on romantically. Due to this concern, he will remain in our seclusion unit until his return to court." Mr. Ecker sent two more letter to this case manager late in 1990; both letters were written in Spanish and in both he asked the case manager to marry him.

Three further court evaluations, dated December 11, 1990, July 2, 1991, and February 10, 1992, were completed at USMCFP, Springfield. Judge Magistrate Michael A. Ponsor, United States District Court Judge, District of Massachusetts, who had been involved with most of Mr. Ecker's court proceedings, received a threatening letter from Mr. Ecker, dated February 9, 1992. This letter stated, in

ECKER, JOHN
REG. NO.: 90050-038
DOB: ████████
FMC, ROCHESTER
PAGE 2

part: "I am now very ashamed of myself for supporting a government that did nothing but oppress the people, abused [sic] the people's constitutional rights, and did nothing but build a hierarchy of power and money hungry blood suckers who sapped money from the average naive American citizen's income...I would strongly advise that you let me go right away. And you know why! Don't make me have to spell it out to you. You'd be making a serious mistake. I will not have mercy!"

While Mr. Ecker was detained in Massachusetts in August of 1991, he began writing sexually explicit letters to a registered nurse at USMCFP, Springfield, Missouri. He also attempted to place phone calls to her, which led her to change her phone number to an unlisted number. He did, however, attempt to call her at the new number in December of 1991. The forensic report, dated December 10, 1992, included the following: "Overall, the correspondence indicated he believed he had a considerable relationship with this woman and still held to the fact that he loved her and wanted to marry her. Letters written during December, however, indicate that Mr. Ecker's thinking began to deteriorate...For example, in a letter dated December 7, 1991, he wrote, 'You can't face me without body alarms, pampers, Haldol, mafia friends and your ignorant right wing FBI prototypes...You're a punk. You're a worthless drifting piece of wood.'"

Mr. Ecker was transferred to FMC, Rochester on August 6, 1992, because of concerns with his inappropriate letter writing to the nurse at USMCFP, Springfield, Missouri.

**HOSPITAL COURSE:** Mr. Ecker arrived at FMC, Rochester on August 6, 1992, for completion of a 4241(d) evaluation. He was maintained on locked status from admission through mid-January based on concerns for the safety of staff members.

Early in his hospitalization, Mr. Ecker stated his belief that he was married to a female case manager at USMCFP, Springfield. During the course of the March 23, 1993, forensic evaluation, the same individual was discussed at length by Mr. Ecker. He made no mention of being married to her, but did state that she had some connection with the Central Intelligence Agency (CIA).

From mid-January through early March, the patient was housed on the Martin Unit, a less restrictive, semi-open unit on the Mental Health Unit. While on the Martin Unit, the patient developed a delusional romantic attachment with a female nurse at FMC, Rochester. On March 3, 1993, the patient explained: "We (Patty and I) were meant to be together. We have a personal relationship...I know she was in Building 2 with that companion having sex...Why did she do this to me?" After this incident, Mr.

ECKER, JOHN
REG. NO.: 90050-038
DOB: ▆▆▆▆▆▆▆▆
FMC, ROCHESTER
PAGE 3

Ecker was returned to locked status because of concern for the nurse's safety.

The patient repeatedly talked about conspiracies against him by agencies including the CIA, Federal Bureau of Investigation (FBI), and the Bureau of Prisons (BOP). He suggested that staff might be involved in these conspiracies.

Early in the course of his hospitalization at FMC, Rochester, the patient complained of Hematospermia, blood in the sperm. He was firm in his belief that "a herbicide or insecticide has been given to me." He even attempted to send out a semen sample in his legal mail for examination.

Mr. Ecker initially declined the psychotropic medication offered to him. On August 18, 1992, an Administrative Due Process Hearing was held. It was the conclusion of the hearing officer that Mr. Ecker required psychotropic medication. He was then given oral medications but was found to be surreptitiously avoiding taking his medication by switching cups when the medication was offered to him. Intramuscular Haldol Decanoate was started on November 6, 1992. He recently has been maintained on Haldol Decanoate, 100 mg, intramuscularly, every 28 days. It appeared that the intensity of his symptoms and irritability had decreased with the continuing use of this medication. His delusional beliefs, however, appeared to have continued over time, as discussed in the forensic evaluation of March 23, 1993.

**DIAGNOSTIC IMPRESSION:**

    AXIS I:    Schizophrenia, Paranoid Type (Principal Diagnosis).

    AXIS II:    Personality Disorder, Not Otherwise Specified (Paranoid and Antisocial Personality Traits).

    AXIS III:    Hematospermia, resolved after evaluation by urologist. He has been diagnosed as having a dry skin condition.

**PRE-RELEASE PANEL:** On March 24, 1993, a Pre-release Panel was convened to determine if Mr. Ecker's release would present a substantial danger to others or the property of others due to mental disease or defect. Mr. Ecker's psychiatric and criminal history, hospital course, and current mental status were reviewed. Mr. Ecker was then invited for an interview by the Pre-release Panel. He arrived appropriately attired in institutional clothing. When questioned by one of the panel members about what he would do if he were allowed to leave the institution, he replied, "I would leave the country." When asked to elaborate, the patient chose not to explain his reply. The patient alternatively expressed an

interest in possibly receiving a "second opinion" evaluation when asked about continuing mental health treatment if he were to leave the institution. Overall, his responses demonstrated no insight into the severity of his mental illness or his need for ongoing care.

**OPINIONS AND RECOMMENDATIONS:** When considering if the release of a patient presently suffering from a mental disease or defect would create a substantial risk of bodily injury to another person or serious damage to the property of another if that person were released, three factors are usually considered: (1) presence of a mental disease or defect; (2) past history of dangerous behavior; and, (3) the presence of a relationship between the mental illness and dangerous behavior.

Mr. Ecker is diagnosed with Paranoid Schizophrenia. His systematized delusions (false beliefs united by a single event or theme based on incorrect inferences about external reality, not consistent with the patient's intelligence and cultural background, that cannot be corrected by reasoning) about CIA, FBI, and BOP plots against him; his delusional beliefs about his relationships with four female BOP staff members; and his preoccupations with these delusions support the diagnosis of this major mental illness. This diagnosis has been established after seven forensic evaluations at three BOP facilities.

Past dangerous behavior is considered the best predictor of future dangerous behavior. Mr. Ecker clearly has a past history of dangerous behavior, including: (1) constructing a firebomb with a wick extending from a gas tank at 14 years of age; (2) conviction for Assault and Battery with a Deadly Weapon when he reportedly found a girlfriend sleeping with another man; and, (3) conviction for Arson in Baltimore, Maryland, in 1984. Mr. Ecker has also threatened Magistrate Judge Michael Ponsor in a letter postmarked February 9, 1992. Mr. Ecker's potential for dangerous behavior has been significantly curtailed since he has spent only approximately 13-months outside of prison, in 1988-1989, since adolescence. Despite his incarceration, however, he was involved in delusional relationships, all products of his major mental illness, with four female BOP staff members which were dangerous or potentially dangerous to them and those close to them.

During a large portion of his incarceration in the BOP, he was kept on locked status. This prevented him from acting on his delusional beliefs.

ECKER, JOHN
REG. NO.: 90050-038
DOB: ▓▓▓▓▓▓▓▓
FMC, ROCHESTER
PAGE 5

The patient has shown resistance and refusal to take psychotropic medication while at FMC, Rochester. In addition, his delusions continued even while on a dosage of psychotropic medication usually considered to be within a therapeutic range for treatment of this condition.

In conclusion, it is our professional opinion that Mr. Ecker is presently suffering from a mental disease or defect such that his release would present a substantial risk of bodily injury to another person or serious damage to the property of another.

Panel Members:

_____
M.A. Conroy, Ph.D.
Director of Forensics
Diplomate in Forensic Psychology
American Board of Professional
   Psychology

_____
L. Thomas Kucharski, Ph.D.
Staff Psychologist

_____
Kevin V. Quinn, M.D.
Psychiatrist

Reviewed by:

_____
Ruth E. Westrick, M.D.
Associate Warden, Mental Health
Chief, Psychiatry Services

_____
Daniel V. Foster, Psy.D.
Chief, Psychology Services

dd: 03-31-1993
dt: 04-01-1993/sw

ECKER, JOHN
REG. NO.: 90050-038
DOB: ~~~~~~~~~~
FMC, ROCHESTER
PAGE 6