UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action |
| v. ) | No. 89-30028-NMG |
| ) | |
| JOHN L. ECKER, ) | |
| ) | |
| Defendant, ) | |

———————————————————)

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S RENEWED
MOTION FOR TRANSFER TO THE CUSTODY OF MASSACHUSETTS**

Now comes the United States of America, in the above-captioned cause, by and through

its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and

opposes Mr. Ecker's Motion For Transfer To The Custody of Massachusetts, and requests that

this motion be denied because:

1.  This Court lacks jurisdiction over this motion because it was not the court that civilly

committed Mr. Ecker pursuant to 18 U.S.C. § 4246(d).

2.  Mr. Ecker's motion is completely without basis in fact or law and is contrary to black

letter Supreme Court case law and prior rulings in the instant case. *See* Jones v. United States,

463 U.S.354, 368-369 (1983); Greenwood v. United States, 350 U.S. 366, 373-376 (1956);

United States v. Ecker, 78 F.3d 726, 727 (1ˢᵗ Cir. 1996); United States v. Ecker, 30 F.3d 966, 971

(8ᵗʰ Cir.), *cert. denied*, 513 U.S. 1064 (1994).

3.  Mr. Ecker's assertion that § 4246(d) contains a "clear directive to transfer him to the

custody of his home state" is contrary to the plain language of the statute and the ruling of the

First Circuit in United States v. Ecker, 78 F.3d at 730-731.

4.  Nevertheless, a request for the Commonwealth of Massachusetts to accept custody of

Mr. Ecker is pending.[1]

## I.  The Legal Framework

Title 18 U.S.C. § 4246 details the procedures for hospitalization of a person due for release from prison but suffering from a "mental disease or defect."  See generally United States v. Ecker, 78 F.3d at 728 n.2.  As the Eighth Circuit Court of Appeals has noted, the statute "provides for the indefinite hospitalization of a person who is due for release but who, as the result of a mental illness, poses a significant danger to the general public."  United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997) (citing United States v. Steil, 916 F.2d 485, 487 (8th Cir. 1990)).

Under the federal involuntary commitment scheme, the district courts are entrusted with "an awesome responsibility to the public to ensure that a clinical patient's release is safe." United States v. Bilyk, 949 F.2d 259, 261 (8th Cir. 1991) (quoting United States v. Clark, 893 F.2d 1277, 1282 (11th Cir. 1990)).  Section 4246 "is a mechanism intended to provide a safeguard to the general public and to ensure that mentally ill and dangerous individuals receive proper treatment."  S.A., 129 F.3d at 999.

Like 18 U.S.C. § 4245 commitment proceedings, § 4246 commitment proceedings are "civil" in nature, see, e.g., United States v. Ecker, 78 F.3d at 727; S.A., 129 F.3d at 998, because in such proceedings "the Government's power is not wielded in a punitive manner." Muhammad, 165 F.3d 327, 332 (5th Cir. 1999)(citing United States v. Baker, 45 F.3d 837, 842

---

[1]  Ecker's statement in his motion and memorandum that the government has done nothing to transfer him to his home state in the last six months is one among many misstatements of fact in his brief.  Moreover, when the Government attempted to provide the facts that could be deemed essential to know prior to filing this motion, counsel refused the offer.

(4th Cir.), cert. denied, 516 U.S. 872 (1995)).  Therefore, the constitutional rights to which a

defendant in a criminal trial is afforded do not apply in the civil commitment context.  Baker, at

844; United States v. Veltman, 9 F.3d 718, 721 (8th Cir. 1993) (noting that "Congress decided

not to offer the full procedural protections available in criminal trials.  See 18 U.S.C. § 4245(a),

(c); § 4247(d) (no jury trial)"), cert. denied, 511 U.S. 1044 (1994).

Nevertheless, "because an adverse result in a commitment hearing results in a substantial

curtailing of the respondent's liberty . . . the Supreme Court has held that procedural due process

does guarantee certain protections to civil commitment respondents."  Baker, 45 F.3d at 843

(citing Vitek v. Jones, 445 U.S. 480, 491-94 (1980)).  Additionally, Congress, by statute, has

expressly provided certain protections.  See 18 U.S.C. § 4247(d).

Proceedings under § 4246 are triggered when the director of a facility in which a person

is incarcerated files a certificate with the clerk of court certifying that a person whose sentence is

about to expire is: (1) "presently suffering from a mental disease or defect" (2) "as a result of

which his release would create a substantial risk of bodily injury to another person or serious

damage to property of another," and (3) "suitable arrangements for State custody and care of the

person are not available."  See 18 U.S.C. § 4246(a); Ecker, 78 F.3d at 728 n.2; S.A., 129 F.3d at

998; United States v. Sahhar, 917 F.2d 1197, 1200 (9th Cir. 1990)

Title 18 U.S.C. § 4246(d) then provides that "[i]f, after the hearing, the court finds by

clear and convincing evidence that the person is presently suffering from a mental disease or

defect as a result of which his release would create a substantial risk of bodily injury to another

person or serious damage to property of another, the court shall commit the person to the custody

of the Attorney General."  18 U.S.C. § 4246(d).

3

The statute goes on to state that the Attorney General "shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until--

> (1) such a State will assume such responsibility; or
> (2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another; whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment."

*See* 18 U.S.C. § 4246(d).

After an individual is committed pursuant to § 4246, the director of the facility in which the  person is hospitalized is required to prepare annual reports "concerning the mental condition of the person and containing recommendations concerning the need for his continued hospitalization."  18 U.S.C. § 4247(e)(B).  **The reports are submitted to the court that ordered the person's commitment to the facility**.  Id. (Emphasis added).  Accordingly, the staff at FMC Springfield, Missouri prepared and filed an Annual Report pursuant to § 4246 on September 21, 2006.  Mr. Ecker was committed to the custody of the Attorney General on October 18, 1993 by Paul A. Magnuson, D.J. of the District of Minnesota.  For that reason that the Annual Report regarding Mr. Ecker that was prepared by the Bureau of Prisons staff at the Federal Medical Center in Springfield, Missouri was sent to that Court.  The undersigned

4

Assistant U.S. Attorney forwarded a copy of that report to this Court on October 4, 2006.  A

copy of the Report is also attached hereto as Exhibit 1.[2]

Lastly, the statute provides for discharge from hospitalization "[w]hen the director of the

facility in which the person is hospitalized . . . determines that the person has recovered from his

mental disease or defect to such an extent that his release would no longer create a substantial

risk of bodily injury to another person or serious damage to property of another."  Id., § 4246(e).

The court then "shall order the discharge of the person or, on the motion of the attorney for the

Government or on its own motion, shall hold a hearing . . . to determine whether he should be

released."  Id.  Section 4246 "is a mechanism intended to provide a safeguard to the general

public and to ensure that mentally ill and dangerous individuals receive proper treatment."  *S.A.*,

129 F.3d at 999.[3]

## II.  <u>Factual and Procedural Background:</u>

As this Court is well aware, John Leonard Ecker has a long, complex and very serious

psychiatric and criminal history.  He is currently a patient hospitalized pursuant to 18 U.S.C. §

4246  (hospitalization of a person due for release but suffering from mental disease or defect) at

the Federal Medical Center ("FMC") in Springfield, Missouri.  Mr. Ecker's motion misstates

both the facts relating to his very complex psychiatric and violent history, as well as the

_____

[2]  Due to the sensitive nature and privacy concerns regarding the material and
information contained in this Report, a copy will not be filed electronically.  A hard copy of the
report will be sent to Mr. Ecker's counsel.

[3]  The Commonwealth of Massachusetts has a similar statutory scheme that governs the
involuntary civil commitment of persons who are mentally ill but criminally dangerous.  *See*
Mass. Gen. Laws, ch. 123, § 8.  These statutes only apply to persons initially committed within
the Commonwealth of Massachusetts.

procedural history of his case.  Indeed, counsel filed the instant motion on behalf of Mr. Ecker

reviewing or requesting a copy of the Annual Report on Mr. Ecker that was prepared by the

Bureau of Prisons pursuant to 18 U.S.C. § 4247(e)(1)(B).[4]  As a result, Ecker's motion and

memorandum contain conclusory allegations that are contradicted in both law and fact and show

a complete lack of understanding concerning the history of this case,[5] the federal mental health

statutes, as well as the Bureau of Prisons' hospital system.  This motion must be denied.

As his annual report details, Mr. Ecker has a lengthy history of violence and criminal

activity, including prior convictions for arson, burglary, breaking and entering, and assault with a

weapon.   In November 1989, Ecker was indicted in the District of Massachusetts for possession

of a firearm by a felon in violation of 18 U.S.C. § 922(g).  Due to his past criminal history, he is

subject to a mandatory minimum sentence of 15 years pursuant to the Armed Career Criminal

Act, 18 U.S.C. § 924(e), and a maximum term of imprisonment of life imprisonment. United

---

[4]  When Attorney Neil Smith for Mr. Ecker called to confer regarding the filing of this motion pursuant to L.R. 7.1, counsel for the United States requested that he await filing this motion until a copy of the Annual Report required by 18 U.S.C. § 4247(e)(1)(B).  Counsel refused to await receipt of the report before filing the instant motion.

[5]  Among other misstatements, Ecker's Motion characterizes him as "the proverbial forgotten man."  Nothing could be further from the truth.  In addition to the 1996 First Circuit appeal, Ecker has made repeated challenges to the results of his competency evaluations, his civil commitment for dangerousness and to the continuing pendency of the instant criminal indictment.  Each of these have been unsuccessful:  *United States v. Ecker*, 162 F.3d 1165 (8th Cir. 1998)(civil commitment); *United States v. Ecker*, 30 F.3d 966 (8th Cir.), *cert. denied*, 513 U.S. 664 (1994)(civil commitment); *United States v. Ecker,* No. 92-2023 (1st Cir., Summary Affirmance, October 7, 1992)(competency); and  *United States v. Ecker*, 923 F.2d 7 (1st Cir.1991)(Indictment).  The defendant has filed several petitions for writs of habeas corpus in the District Court to obtain his release: *Ecker v. Carlson*, 93-CV-10630-REK; *Ecker v. Benov*, 00-CV- 40070-GAO; *Ecker v. Winn*, 02-CV-10710-NMG; *Ecker v. Beeler*, 03-CV-40222-REK. None of these have been successful. He has also written numerous letters to the court.

States v. Stokes, 388 F.3d 21, 28 (1st Cir. 2004), *vacated on other grounds,* 125 S.Ct.1678 (2005), *reinstated,* 2005 WL 2170091 (1st Cir. Sept. 8, 2005); *see also,* Custis v. United States, 511 U.S. 485, 487 (1994).

Mr. Ecker's lengthy history of mental illness included diagnoses of Schizophrenia, Antisocial Personality Disorder, and delusions of an erotomatic nature. *See* Ecker, 78 F.3d at 727; United States v. Ecker, 30 F.3d at 970 n.6. In March of 1993, after seven competency evaluations (two finding him competent and five finding him not competent), the district court in the District of Massachusetts, Keeton, D.J., found him long-term incompetent and that it was unlikely that he would regain competency in the near future. United States v. Ecker, 78 F.3d at 727.

Thereafter, in October, 1993, the District Court of Minnesota, Magnuson, D.J., found that his mental illness rendered him incompetent to stand trial and dangerous to the public. United States v. Ecker, 30 F.3d at 967. Therefore, the district court committed him to the custody of the Attorney General pursuant to 18 U.S.C. § 4246. Id. Ecker's commitment was upheld in the first instance by the Eighth Circuit in United States v. Ecker, 30 F.3d at 970 and again in 1998 after Ecker filed a motion for complete or conditional release. Ecker, 162 F.3d at 1165.

As set forth in the Government's Opposition to Ecker's Motion to Dismiss the Indictment (incorporated herein by reference), on July 13, 1999, Ecker was transferred to FMC Devens from the United States Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri. Riggs Declaration, ¶ 4. According to Dr. Riggs, Ecker's primary psychiatrist at FMC Devens, Ecker was noncompliant with his antipsychotic medication over three months, resulting in behavior that is consistent with a diagnosis of Schizophrenia, Paranoid Type. Id., ¶ 7. These

signs include paranoia, loose associations, preoccupation with internal stimuli (manifested by conversations with himself in his cell), bizarre thoughts (such as asking for ether so he could perform surgery on himself), ambivalence, and flat affect.[6]

Dr. Riggs noted that Mr. Ecker can appear to be very logical and reasonable at times, which could lead anyone to doubt his diagnosis as a Paranoid Schizophrenic. Moreover, Dr. Riggs' interaction with Ecker has "removed any doubt" from his mind; he is convinced that Ecker "is a very well-defended Paranoid Schizophrenic; *i.e.*, he has the ability for brief periods of time to present himself without any obvious psychotic symptoms due to his innate coping skills and ability to recognize when he might be about to say or do something which would be incriminating." Riggs Declaration, ¶ 8. Although such self-monitoring ability would ordinarily be seen as positive, Dr. Riggs is of the opinion that it actually makes Mr. Ecker more dangerous, given his underlying character disorder as a "manipulative psychopath." Id. In support of this opinion, Dr. Riggs notes that a good deal of Mr. Ecker's psychopathology "has to do with erotomatic traits which have led to a documented history of obsession with female Bureau of Prisons staff members." Id.

Echoing the opinion of Mr. Ecker's Risk Assessment Panel, Dr. Riggs opined that should Mr. Ecker be released from custody, he would discontinue all medication and, as Dr. Riggs observed, would deteriorate into flagrant Paranoid Schizophrenia and would definitely present a danger to others. Id., ¶ 9 and Exhibit "A" to Riggs Declaration. *Lastly, Dr. Riggs noted that*

---

[6]  As a result, on August 16, 2000, an involuntary medication hearing was conducted pursuant to 28 C.F.R. §§ 549.43 et seq. The Hearing Examiner determined that Mr. Ecker is mentally ill and potentially dangerous to himself or others, that medication was necessary to treat his mental illness, and that he was gravely disabled. Riggs Declaration ¶ 7.

*despite repeated efforts to place Mr. Ecker in his state of domicile (Massachusetts), state*
*authorities have not been willing to assume responsibility for his custody, care, and treatment.*
On February 15, 2000, the Massachusetts Interstate Compact Coordinator (ICC) informed FMC
Devens staff that the state "will not be able to accept John Ecker under the terms of the Interstate
Compact for Mental Health, as there is no appropriate program available to meet his needs."  Id.,
¶ 10 and Exhibit "B" to Riggs Declaration (Emphasis added).  Nevertheless, after the most
recent Annual Review, the Bureau of Prisons has again made that request of the Commonwealth
of Massachusetts.

Dr. Riggs' opinion that outlines Mr. Ecker's ability to appear competent and without
mental illness foreshadowed events to come.  In September of 2002, Mr. Ecker was transferred
from FMC Devens to FMC Butner as a result of his erotomatic attachment to a female at that
institution.  During that stay in Butner he began treating with another psychiatrist, Robert
Lucking.  On March 9, 2004, the A.F. Beeler, the Warden of the Federal Medical Center at
Butner, North Carolina, issued a Certificate of Restoration of Competency to Stand Trial
advising the Court that the defendant,"is able to understand the nature and consequences of the
proceedings against him and to assist in his own defense." That Certification was based upon the
Annual Update Report issued by the Mental Health Department at the Federal Medical Center
("FMC") Butner on February 17, 2004.  The evaluation was headed by Robert G. Lucking,
M.D., Staff Psychiatrist, who personally evaluated Mr. Ecker and found him to be competent to
stand trial – yet still dangerous.

Some three months later, on June 7, 2004, after receiving new and additional information
relative to Mr. Ecker's activities, Dr. Lucking issued an Addendum to that Annual Psychiatric

Report asserting that after reviewing new information, the defendant's "current competency is in doubt and that another competency evaluation is indicated." Based upon Dr. Lucking's addendum, on June 15, 2004, the Government filed a motion requesting a further psychiatric evaluation of the defendant be conducted in order to determine his competency to stand trial pursuant to 18 U.S.C. § 4241.

At a status conference held by the Court on January 25, 2005, after the appointment of new defense counsel, counsel for the government renewed its request for a further competency evaluation. Attorney Robert Braceras (who presently represents the defendant) did not oppose the government's request and also requested – on behalf of the defendant – that the Court authorize funds for an independent psychiatric evaluation of the defendant's competency. The Court granted the parties requests and ordered that after the defendant's independent evaluation was concluded, that the defendant be transported back to FCI-Butner so that the Government could also perform a competency evaluation.

Following the Conference on January 25, 2005, counsel for the defendant retained a psychiatrist to perform a competency evaluation of the defendant. After the report was completed sometime in late March or early April of 2005, the defendant was transported to FMC Butner where he underwent another competency evaluation. In June of 2005, that evaluation was complete. At that time Dr. Lucking found that Mr. Ecker was not competent to stand trial.

After an evidentiary hearing on July 14, 2005, Judge Keeton once again found the defendant not competent to stand trial and not likely to regain competency in the near future – even with the aid of forced medication. (A copy of the transcript of the hearing is attached was attached as Exhibit I to Ecker's memorandum in support of his Motion to Dismiss). During that

hearing, although he opined that Mr. Ecker was not then competent to stand trial, Dr. Lucking did not rule out that possibility in the future.

On August 2, 2006, this case was reassigned to this Court. On September 19, 2005, a status conference was held. In October 2005, after Judge Keeton's last finding that Ecker was not competent to stand trial, Mr. Ecker wrote another letter to the Court requesting a reconsideration of that finding, requesting that he not be forcibly medicated, requesting to be released and that he be allowed to marry the female upon whom he is presently fixated. (Exhibit 2). He continues to persist in this request to the present as set forth in the Annual Report.

On October 24, 2005, Ecker filed a Motion to Dismiss the Indictment. On March 17, 2006, this Court issued its Memorandum and Order dismissing the Indictment. On May 30, 2006, he was transferred to FMC Springfield Missouri. On September 14, 2006, a Risk Assessment Panel was convened to conduct the Annual Review.

The Annual Review that was prepared in September, 2006, is a thorough evaluation of Mr. Ecker's present status and included a review of his plans should he be released from federal custody. The Risk Assessment Panel conducted a Mr. Ecker's prior psychiatric history; performed a treatment review, including his hospital course.

When he arrived at FMC Springfield on May 30, 2006. A history and physical were performed. He was initially placed in a locked unit for observation. When he was found to be stable, he was transferred to the semi-locked unit on June 1, 2006. At that time the treatment team initiated a behavioral management plan specifying that he could be transferred to an open unit if he could show nine months of appropriate behavior towards female staff members. The Risk Assessment Panel also review their "Community Impressions/Resources" for Mr. Ecker.

11

They interviewed Mr. Ecker in person. They also conducted thorough "Risk Assessment

Measures," including Psychology Checklist Revised, Second Edition (PCL-R); Violence Risk

Assessment Guide (VRAG); and HCR-20. Finally, they established their diagnostic impression

and then formulated their opinions and recommendations.

The Risk Assessment Panel concluded that Mr. Ecker "currently suffers from a mental

illness that places him at significant risk of harming others, or the property of others, if released.

The Panel expressed the belief that he is not ready for release to the community setting and

recommended that his current commitment be maintained at this time. Their ultimate

recommendation was that Mr. Ecker remain at FMC Springfield until a suitable state placement

is obtained. At this time, a request is pending with the Commonwealth of Massachusetts to

determine whether such a placement is possible. As soon as a response is received, the United

States will request the Court's permission to supplement this Opposition.

**III. <u>Argument</u>:**

**1. The Court Lacks Jurisdiction Over This Motion:**

This Court lacks jurisdiction over this motion because it was not the court that civilly

committed Mr. Ecker pursuant to 18 U.S.C. § 4246(d). His civil commitment in the District of

Minnesota was upheld by the Eighth Circuit in <u>United States v. Ecker</u>, 30 F.3d 966 (8th Cir.),

*cert. denied,* 513 U.S.1064 (1994). The criminal indictment is no longer pending in this District

in accordance with this Court's Order dated March 17, 2006. Mr. Ecker is presently located in

the Federal Medical Center in Springfield, Missouri. The plain language of 18 U.S.C. § 4246(d)

leaves jurisdiction with the Court who enters the civil commitment order. Therefore, there is no

legal basis for jurisdiction in the District of Massachusetts pursuant to 18 U.S.C. § 4246(d).

12

**2.  Mr. Ecker's Motion Is Completely Without Basis in Fact or Law**.

Contrary to Mr. Ecker's assertions in this motion, he is lawfully in federal custody pursuant to his civil commitment under § 4246 and has been found by clear and convincing evidence to be suffering from a mental disease or defect that renders him **criminally dangerous.** United States v. Ecker, 30 F.3d at 971.  Mr. Ecker's assertion that he has been held in custody solely because of his mental illness is simply not correct.[7]  His continued confinement in federal custody as a result of his civil commitment does not violate the Constitution of the United States or any federal statute.  *See* Jones v. United States, 463 U.S.354, 368-369 (1983); Greenwood v. United States, 350 U.S. 366, 373-376 (1956); United States v. Ecker, 78 F.3d at 727; United States v. Ecker, 30 F.3d at 971.

The claims that Mr. Ecker raise concerning his federal custody essentially go to the basis for his civil commitment.  That commitment has been upheld by the Eighth Circuit Court of Appeals and certiorari was denied by the United States Supreme Court.  United States v. Ecker, 30 F.3d at 971.

Contrary to Mr. Ecker's claims, his "protracted federal custody" does not violate any constitutional right to liberty or due process.  Nor does Mr. Ecker have a right, Constitutional or otherwise, to be transferred to the custody of the Commonwealth of Massachusetts.  Rather, Mr. Ecker has been appropriately civilly committed to the custody of the Attorney General due to the fact that he suffers from a mental defect or disease that renders him criminally dangerous.

**3.  Mr. Ecker Does Not Have Any "Right" to Placement in His Home State/**

---

[7]  Likewise, Mr. Ecker's assertion that he has "received inconsistent treatment for his illness with little or no access to his family in Massachusetts" is also not correct.

Contrary to Mr. Ecker's assertions, section 4246(d) does not contain a "clear directive to transfer him to the custody of his home state." Counsel for Mr. Ecker did not even await receipt of the Annual Review prior to filing the instant motion. As a result, many of the conclusory allegations set forth in the motion are incorrect and without any factual or legal basis. In his reliance upon <u>Jackson v. Indiana</u>, 406 U.S. 715, 738 (1972) and the Ninth Circuit decision in <u>United States v. Sahhar</u>, 56 F.3d 1026, (9th Cir. 1995), he makes essentially the same arguments that were rejected by the First Circuit in <u>United States v. Ecker,</u> 78 F.3d at 731-732. The First Circuit, relying upon the plain language of the statute, § 4246(d) held that Ecker the statute did not endow Ecker with a "right" to state placement. Ecker's position is simply wrong as a matter of law.

The First Circuit in one of Ecker's prior appeals in this case, held that "the Attorney General is only required to make 'reasonable efforts' to place Ecker in state care." <u>Id.</u>, 78 F.3d at 730-731. The First Circuit specifically concluded that the statute did not endow Mr. Ecker with a "right" to state placement." <u>Id</u>. at 731. Thus, this motion completely misconstrues the Attorney General's obligations and is contrary to prior judicial precedent in the instant case.

**4.  A Request For Transfer Is Pending With The Commonwealth of Massachusetts.**

Once again contrary to Mr. Ecker's assertions, the Bureau of Prisons has taken action that Ecker states they have failed to do. In accordance with its responsibilities under 18 U.S.C. § 4247(d), the Bureau of Prisons has contacted the Commonwealth of Massachusetts to determine

14

whether the state will assume responsibility for the care, custody and treatment of Mr. Ecker.[8]

Under § 4247(d), the Attorney General is required to "make all reasonable efforts to cause"

Massachusetts to assume such responsibility.  The Attorney General cannot require the

Commonwealth of Massachusetts to assume responsibility for the care, custody and treatment of

Mr. Ecker.  That request is pending.[9]   The relief requested by the instant motion, e.g., an Order

requiring the Attorney General to transfer custody to the Commonwealth of Massachusetts  may

violate the Eleventh and Fourteenth Amendments to the United States Constitution as it would

essentially order the Commonwealth of Massachusetts – who is not a party to this case – to

accept custody of Ecker.  That this Court cannot do as a Constitutional matter.

        The factual and legal arguments that form the basis for the instant motion to dismiss are

incorrect in several important instances: The motion and supporting memorandum are replete

with factual errors relating to Mr. Ecker's psychiatric and procedural history.  The memorandum

mistakenly relies upon legal authorities relating to pre-trial detention that are inapplicable to Mr.

Ecker, who has been civilly committed and is in federal custody pursuant to 18 U.S.C. § 4246

because of his mental illness and dangerousness.  Thus, the legal authorities relied upon are

inapplicable to the defendant's status and were distinguished on that basis by the First Circuit in

---

[8]  The Bureau of Prisons has not yet received a response from Massachusetts.  The United States Attorney's Office will advise the Court as soon as the Commonwealth responds to the request.

[9]  It is worth noting, however, that there may be legitimate factual and legal reasons that would preclude the Commonwealth from assuming custody of Mr. Ecker.  There may be no suitable placement for Mr. Ecker within the state mental health system in the Commonwealth and Mr. Ecker cannot, as a matter of law, be placed at Bridgewater State Hospital.  *See*  Mass. Gen. Laws ch. 123, §§ 7 and 8.

*Ecker*, 78 F.3d at 726-731.  As the First Circuit previously recognized, the statute only requires

"reasonable efforts" to do so, not the absolute duty asserted by the defendant[10]. 18 U.S.C. §

4246(d); *Ecker*, 78 F.3d at 730-731. The Bureau of Prisons has complied with all statutory

requirements with regard to Mr. Ecker and intend to continue to do so.

Wherefore, for all the foregoing reasons, the United States requests that the Court to deny

Mr. Ecker's Motion For Transfer To The Custody of Massachusetts

Respectfully Submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:      /s/ Mary Elizabeth Carmody
MARY ELIZABETH CARMODY
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748–3290

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document

---

[10]   Contrary to the defendant's assertions, the defendant is and has been receiving treatment for his mental illness.  The federal commitment statutes requires the Attorney General to place the defendant in a facility that can accommodate the patient's rehabilitation needs and that will provide appropriate services for his mental health status. 18 U.S.C. § 4247 (C) and (D). Indeed, the defendant is presently being held at the Federal Medical Center in Springfield, Missouri, one of several federal facilities that specializes in such treatment.

16

by ECF/mailing a copy of same in an envelope bearing sufficient postage for delivery to:

> Robert Braceras, Esq.
>
> Goodwin Proctor, LLP
>
> Exchange Place
>
> Boston, MA 02109

This 10th day of October 2006.

/s/ Mary Elizabeth Carmody

_____

MARY ELIZABETH CARMODY

Assistant United States Attorney

17