UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>JOHN LEONARD ECKER,<br><br>           Defendant. | Criminal No. 89-30028-NMG-1 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS INDICTMENT WITH PREJUDICE
AND FOR TRANSFER TO MASSACHUSETTS**

**Leave To File Granted on January 18, 2007**

In its opposition and supplemental briefing, the government advances two arguments: (1) that this Court does not have jurisdiction; and (2) that Massachusetts has refused to accept the transfer of Mr. Ecker. Neither argument has merit. First, with respect to this Court's jurisdiction, the government is flatly wrong. Mr. Ecker's § 4246 commitment proceeding was transferred to this Court *more than five years ago*.[1] The fact that the U.S. Attorney's Office does not even realize that jurisdiction over Mr. Ecker's commitment was transferred to this Court underscores Defendant's point: Mr. Ecker is a forgotten man in the federal system and will remain so unless this Court grants him relief. Second, with respect to Massachusetts's "refusal" to accept the transfer of Mr. Ecker, the government has failed to explain how a Massachusetts statute trumps federal law or preempts the government's obligation to expend all reasonable efforts to transfer Mr. Ecker to Massachusetts. Such "reasonable efforts" require more than a

---

[1] The government's failure to understand the proper court adjudicating Mr. Ecker's confinement suggests that it has been sending status reports on Mr. Ecker – including the most recent status report attached to the government's opposition – to the wrong court for the past five years. If so, this constitutes a serious breach of its obligations under 18 U.S.C. § 4247(e)(b).

letter request once every six years. Finally, if Mr. Ecker is not transferred, he may be subject to immediate release.

## ARGUMENT

### I. THIS COURT IS THE APPROPRIATE FORUM TO DETERMINE MR. ECKER'S MOTION TO TRANSFER

The government's primary argument in its opposition to Defendant's motion to transfer is that this Court "lacks jurisdiction over this motion because it was not the court that civilly committed Mr. Ecker pursuant to 18 U.S.C. § 4246(d)." *See* Government's Opposition to Defendant's Renewed Motion for Transfer to the Custody of Massachusetts (hereinafter "Opposition"), at 1.[2] The government is wrong: Mr. Ecker's commitment proceeding was transferred to the District of Massachusetts more than five years ago.

On July 20, 2001, Judge Magnuson, United States District Judge for the District of Minnesota, entered an order transferring Mr. Ecker's 18 U.S.C. § 4246 petition to the District of Massachusetts. *See* Memorandum and Order, dated July 20, 2001, attached hereto as Exhibit 1. Judge Magnuson determined that "such a transfer is not only appropriate, but is necessary to further the ends of justice in this case." *Id.* at 2. The court reasoned that Mr. Ecker is a resident of Massachusetts and his family lived here — facts that remain true today. Judge Magnuson specifically left the resolution of Mr. Ecker's motion for discharge "to the sound discretion of the United States District Court for the District of Massachusetts." *Id.* at 3. The Minnesota docket, Case No. 93-cv-00298-PAM, indicates that the matter is now closed. *See* Civil Docket for Case # 3:03-cv-00298-PAM, attached hereto as Ex. 2. The final entries on that docket, dated July 20,

---

[2] *See also Opposition*, at 13 ("plain language of 18 U.S.C. § 4246(d) leaves jurisdiction with the Court who [sic] enters the civil commitment order. Therefore, there is no legal basis for jurisdiction in the District of Massachusetts.").

2001, state that the case was transferred to the District of Massachusetts.[3] *Id.* Thus, this Court is the only appropriate forum to determine Mr. Ecker's fate.[4]

## II. MASSACHUSETTS'S INITIAL REFUSAL DOES NOT TRUMP THE GOVERNMENT'S CONTINUING OBLIGATION TO MAKE REASONABLE EFFORTS TO TRANSFER MR. ECKER TO MASSACHUSETTS

In its Supplemental Memorandum in Opposition to Mr. Ecker's renewed motion, the government indicates that Massachusetts has refused to accept custody of Mr. Ecker. *See* Government's Supplemental Memorandum in Support of its Opposition to Ecker's Renewed Motion for Transfer to the Custody of Massachusetts ("Supplemental Opp."), at 1. This initial "refusal" does not put an end to this matter. The Commonwealth's predictable refusal to accept the burden and cost of housing Mr. Ecker does not trump the federal government's continuing obligation to make reasonable efforts to transfer Mr. Ecker to Massachusetts. Indeed, if Mr. Ecker is not transferred to Massachusetts for civil commitment here in the Commonwealth, he may be subject to immediate release.

### A. The Government Has Failed To Exercise Reasonable Efforts To Transfer Mr. Ecker To Massachusetts

The government touts its recent request to Massachusetts, *see* Supplemental Opp. at 2-3, but by the government's own admission, this was its first attempt in more than 5 years to comply with § 4246(d)'s requirement to transfer Mr. Ecker to his home state. *Id.* This is legally

---

[3] Docket entries in Massachusetts indicate that this matter was transferred to Massachusetts on July 30, 2001, reassigned to this session on August 2, 2005, and terminated on September 30, 2005. *See* Civil Docket for Case # 1:01-cv-11310-NMG, attached hereto as Ex. 3. Presumably, the civil case was terminated in favor of consolidating all matters relating to Mr. Ecker under the criminal case, Civ. A. # 89-30028. For this reason, Mr. Ecker's renewed motion for transfer was filed as part of the criminal case. Alternatively, if the civil case authorizing Mr. Ecker's § 4246 incarceration has actually been terminated and closed, then there is no present civil matter allowing the government to hold Mr. Ecker pursuant to § 4246, and he should be released forthwith.

[4] It is ironic that the government notes in its Opposition that it is required to submit annual reports to the Court concerning Mr. Ecker's mental condition, *see Opposition*, at 4; *see also* 18 U.S.C. § 4247(e)(B), when it has failed such obligation. That the government failed to notice that these annual reports were being sent *to the wrong court* reinforces Defendant's argument: no one in the federal government was taking responsibility for supervising Mr. Ecker's custody. If this Court does not now look out for Mr. Ecker's welfare, no one will.

insufficient and simply does not qualify as "reasonable efforts." *See* 18 U.S.C. § 4246(d) ("The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment"). The government would have this Court accept its letter request to Massachusetts as the total effort necessary under § 4246(d). Supplemental Opp. at 1. The government is wrong. Reasonable efforts to transfer Mr. Ecker to his home state pursuant to § 4246(d) require more than a mere letter request once every six years. The government cannot simply accept Massachusetts's self-serving refusal to accept Mr. Ecker's transfer as an excuse to ignore him for another six years. The government must do more.

Moreover, the government argues (incorrectly) that, "as a matter of law," Mr. Ecker cannot be transferred to Bridgewater State Hospital. Supp. Opp. at 3. The government's description of Massachusetts law in this regard is disingenuous at best. Massachusetts law does *not* prohibit the commitment of a federal prisoner. *See* M.G.L.A. c. 123, §§ 7-8. Indeed, if there were a Massachusetts statute precluding the transfer of federal detainees, there would be a Supremacy clause question, as federal law expressly provides for and requires such transfer to State custody. *See* 18 U.S.C. § 4246(d); *United States v. Jackson*, 306 F. Supp. 4, 6 (N.D. Cal. 1969) ("When, as in this case, there is no likelihood of mental competence in the foreseeable future the federal responsibility for the accused should transfer to the state which has more appropriate facilities for the long-term care of the petitioner"). The reality is that Massachusetts is a signatory to the Interstate Compact on Mental Health, M.G.L. c. 123 App. § 1-1, which explicitly allows for the transfer of mentally ill prisoners to the Commonwealth. Massachusetts law merely requires a civil commitment proceeding before an individual is committed to an appropriate facility in the Commonwealth. M.G.L. c. 123 §§ 7-8. Specifically, civil

commitment of a dangerous person in Massachusetts requires an official to petition the state district court for commitment of a person to Bridgewater State Hospital "when it is determined that the failure to hospitalize in strict security would create a likelihood of serious harm by reason of mental illness." M.G.L. c. 123 § 7(b). Accordingly, Massachusetts law does not prohibit the transfer of Mr. Ecker; rather, a civil commitment proceeding must simply precede such transfer.

Federal law requires the government to exercise "all reasonable efforts" to transfer Mr. Ecker to his home state. *See* 18 U.S.C. § 4246(d)**.** Given Massachusetts's statutory scheme, such reasonable efforts may require the government to initiate commitment proceedings to facilitate the transfer. The burden on the government to initiate such proceedings is *de minimis*, particularly in light of what is at stake — including Mr. Ecker's liberty, his ability and right to associate with his family, and his right to receive appropriate treatment in his home state. Indeed, other courts have required the government to make similar efforts to facilitate the transfer of detainees like Mr. Ecker. *See, e.g., United States v. Hicks*, 799 F. Supp. 1148, 1151 (S.D. Fla. 1992) ("The Court finds that it would be ridiculous to keep Hicks in an inadequate federal institution away from his family in Florida at the mercy of a never ending cycle of evaluations and periodic court hearings."); *Jackson*, 306 F. Supp. at 7 ("It is incumbent upon the federal officials involved in this case to direct the State's attention to the situation presented here and to make them aware of the need for the appropriate civil commitment"); *Clark v. Settle*, 206 F. Supp. 74, 80 (W.D. Mo. 1962) (stating the court's wish that Massachusetts should accept transfer of a mentally ill federal inmate "in a manner consistent with this opinion to the end that the proper medical authorities of Massachusetts will be directed to accept custody of the petitioner for handling in accordance with the mental health laws of Massachusetts.").

Absent any federal criminal charges, the government no longer has a federal interest in Mr. Ecker. Congress anticipated this issue and thus enacted § 4246(d), which expressly requires the government to exercise "reasonable efforts" to transfer a person in Mr. Ecker's position to his home state. This Court should order the government to expend all reasonable efforts to transfer Mr. Ecker to Massachusetts in compliance with § 4246, even if such efforts require the initiation of civil commitment proceedings here in Massachusetts.[5]

### B.   If Mr. Ecker Is Not Transferred To Massachusetts, He Should Be Released.

If the government does not effect Mr. Ecker's transfer to Massachusetts, Mr. Ecker should be released pursuant to 18 U.S.C. § 4246(g). Section 4246(g) provides:

> **Release to state of certain other persons:** If the director of a facility in which a person is hospitalized pursuant to this chapter certifies to the Attorney General that a person, against whom all charges have been dismissed for reasons not related to the mental condition of that person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried for the purpose of institution of State proceedings for civil commitment. *If neither such State will assume such responsibility, the Attorney General shall release the person upon receipt of notice from the State that it will not assume such responsibility, but not later than ten days after certification by the director of the facility.*

18 U.S.C. § 4246(g) (emphasis added).

The government may be heard to argue that § 4246(g) does not apply to Mr. Ecker, contending that the charges against him were dismissed as a result of his mental condition. Such an argument would be misplaced for two reasons. First, while Mr. Ecker's mental health

---

[5] The government likewise cannot argue that Massachusetts lacks the appropriate facilities or ability to house and to treat Mr. Ecker. Massachusetts has world class mental health experts and facilities designed to detain the most dangerous and seriously ill people that can be found in our society.

admittedly prevented any trial from going forward, the charges against him were only dismissed after he had spent more than 16 years in federal custody.  Thus, Mr. Ecker's mental health certainly played a role in delaying the trial on the charges against him, but for 16 years his health did not result in the dismissal of the case.  Rather, the dismissal of the charges was warranted by the fact that Mr. Ecker had already been confined for a period of time — 16 years — that was longer than any likely sentence on the criminal charges.  *See, e.g., United States v. DeBellis*, 649 F.2d 1, 2-3 (1st Cir. 1981) (vacating an order by the district court that allowed the accused appellant to be committed beyond his maximum sentence); *Hicks*, 799 F. Supp. at 1150 ("Thus, if Hicks were competent to stand trial today and was convicted for violating 18 U.S.C. § 871, he would be set free following sentencing because he would have already served his time.").

Second, a strong body of case law supports Mr. Ecker's release pursuant to § 4246(g).  In *United States v. Charters*, 829 F.2d 479 (4th Cir. 1987), the Fourth Circuit explained that "'Congress' unwavering position that care of the mentally ill is not a federal function is ... evidenced in section 4246(g), which provides that once federal charges have been dismissed the federal government must release *even a dangerous defendant* if he cannot be given to state custody."  *See id.* at 486, n.7 (emphasis in original).[6]  Notably, a detainee's release is required "*even if the detainee is a person whose release would create a substantial risk of bodily injury or property damage.*"  *Perry*, 788 F.2d at 110 (citing *Greenwood v. United States*, 350 U.S. 366, 375 (1956)) (emphasis added); *see also Cook v. Ciccone*, 312 F. Supp. 822, 824 (D.C. Mo. 1970) (holding that an incompetent person should "be ultimately transferred to the appropriate state

---

6   *See also United States v. Baker*, 807 F.2d 1315, 1324 (6th Cir. 1986) ("Congress' decision … was a result of its belief that it 'is essentially the function of the States' to provide care and treatment to mentally ill individuals whose sentences are about to expire or who no longer face federal charges because of their illness");*United States v. Perry*, 788 F.2d 100, 110 (3d Cir. 1986) (citing *Greenwood v. United States*, 350 U.S. 366, 375 (1956), for the holding that "[t]he authority conferred by the mental illness civil commitment statute is 'duly guarded,' both procedurally and substantively, and in recognition of the limits of congressional authority it provides for release of the detainee when the federal reason for detention ceases").

authorities for adequate control and treatment. In the event that state authorities will not accept the accused, *consideration must be given to his outright release from federal custody.*") (*citing Jackson*, 306 F. Supp. at 7).

The "only qualification" to § 4246(g)'s mandatory release requirement is that "the state of domicile or of trial be afforded the opportunity to commence state civil commitment proceedings within a limited time." *Perry*, 788 F.2d at 110. With this qualification, and absent a transfer to the Commonwealth of Massachusetts, Mr. Ecker should be released pursuant to § 4246(g).[7]

## CONCLUSION

Congress did not intend the Bureau of Prisons to supplant state mental health facilities. Congress enacted § 4246 to ensure that individuals like Mr. Ecker would receive appropriate treatment by State authorities when there was no longer a federal interest in their detention. Here, if the government is not ordered to expend all reasonable efforts to transfer Mr. Ecker to Massachusetts, Mr. Ecker may lose another sixteen years foundering in the federal prison system, far from his home and family, and in violation of § 4246. For these reasons, and for those stated in Mr. Ecker's opening memorandum in support of his renewed motion to transfer, Mr. Ecker respectfully requests that the Court order the federal government to take all reasonable steps to transfer Mr. Ecker to an appropriate mental health facility in the Commonwealth of Massachusetts.

---

[7] If Massachusetts continues to refuse state custody of Mr. Ecker, he should at the very least be transferred to Ft. Devens where his family will be able to visit him on a regular basis.

Respectfully submitted,

JOHN LEONARD ECKER

By his attorneys,


/s/ Roberto M. Braceras
Roberto M. Braceras (BBO #566816)
Neil T. Smith (BBO #651157)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

DATED: January 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 18, 2007.

 /s/  Roberto Braceras
Roberto M. Braceras