**United States District Court**
**District of Massachusetts**

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
                                )    Criminal Action No.
            v.                  )    89-30028-NMG
                                )
JOHN LEONARD ECKER,             )
                                )
            Defendant.          )
_____)
```

**hereinafter to be docketed as:**

```
_____
                                )
JOHN LEONARD ECKER,             )
            Plaintiff           )
                                )
                                )    Civil Action No.
            v.                  )    01-11310-NMG
                                )
UNITED STATES OF AMERICA,       )
                                )
            Defendant.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In March, 2006, this Court dismissed the indictment against John Leonard Ecker ("Ecker") who had been held in federal custody for 16 years and charged with one count of felony possession of a firearm under 18 U.S.C. § 922(g). Because of Ecker's perpetual mental health problems, he remained in federal custody even after dismissal of the indictment.

-1-

Now pending before the Court is a renewed motion by Ecker to order the United States Attorney General to transfer him from federal custody to a state facility within the Commonwealth of Massachusetts. The government vigorously opposes the motion and contends that because the Massachusetts Department of Mental Health has denied the transfer request, Ecker must remain in federal custody. The government also challenges this Court's jurisdiction over this (and all future) civil motions by Ecker regarding his civil commitment.

On March 29, 2007, the Court held a contested hearing on the matter. The issues raised by the parties as well as the tenor of the remarks of counsel bear witness to the incredibly disordered and convoluted history of the case. For nearly two decades, this case has involved two federal district courts and several federal judges and federal prisons. The Court begins, therefore, by outlining the procedural history of the case in order to focus more clearly on the current issues.

I. **Procedural History**

Ecker was indicted in the District of Massachusetts on one count of felony possession of a firearm on November 8, 1989. After his initial appearance, Ecker moved for (and United States Magistrate Judge Michael Ponsor granted) a psychiatric exam on November 16, 1989. The initial count against Ecker was dismissed

-2-

and another count charging the same crime was entered on a
superseding information on August 7, 1990.  He pled not guilty at
his arraignment held on December 18, 1991.  On February 20, 1992,
Magistrate Judge Ponsor recused himself from the case and the
case was reassigned to Senior Judge Frank Freedman.  A sealed
psychiatric report found Ecker to be incompetent and on February
26, 1992, Judge Freedman recused himself and the case was again
reassigned, this time to United States District Judge Robert
Keeton.

On July 28, 1992, Judge Keeton held a competency hearing at
which he found Ecker incompetent to stand trial and ordered him
committed for hospitalization not to exceed four months pursuant
to 18 U.S.C. § 4241(d)(1).  Ecker appealed the order to the First
Circuit Court of Appeals which summarily affirmed the judgment of
the district court on October 29, 1992.  On January 29, 1993,
Judge Keeton ordered that the commitment of Ecker be extended for
another four months.  Finally, on April 16, 1993, Judge Keeton
found that Ecker was not competent to stand trial and ordered
further evaluation to determine whether proceedings under § 4246
were warranted.  An appeal filed by Ecker was dismissed by the
First Circuit on July 20, 1993.

On May 10, 1993, the government filed a petition for civil
commitment in the United States District Court for the District
of Minnesota (where Ecker was then incarcerated) pursuant to 18

U.S.C. § 4246.  After a hearing on June 25, 1993, the Minnesota
District Court adopted Magistrate Judge Jonathan Lebedoff's
Report and Recommendation to commit Ecker based on a finding that
he was mentally ill and dangerous.  Ecker appealed that judgment
to the Eighth Circuit Court of Appeals which affirmed the
district court.  United States v. Ecker, 30 F.3d 966 (8th Cir.
1994).

Thereafter, Ecker's case became strangely bifurcated between
two separate district courts: the criminal case proceeded in the
District of Massachusetts while the civil commitment was ordered
by the District of Minnesota.  In the years between 1993 and
2001, the cases proceeded in tandem.  In the District of
Minnesota, Ecker filed numerous (unsuccessful) motions for
hearings and discharge.  In the District of Massachusetts, he
persisted in filing motions to dismiss the indictment and the
Court, just as consistently, continued to deny those motions and
find him incompetent to stand trial.  Although the District Court
of Minnesota dealt primarily with the "civil" aspect of the case
and the District Court of Massachusetts handled the criminal
charges, the two proceedings were necessarily linked by Ecker's
problematic mental health status.

On July 20, 2001, Judge Paul Magnuson of the District Court
of Minnesota transferred the civil case to the District Court of
Massachusetts.  At issue before Judge Magnuson was Ecker's Motion

-4-

for Discharge or for Finding of Competency to Stand Trial.  The motion was denied without prejudice so that Ecker "may reinstate the Motion in the District of Massachusetts".  The case was then ordered transferred to the United States District Court for the District of Massachusetts and the Minnesota civil case was closed.

As a result of the transfer of the Minnesota case, the two halves of Ecker's case were united.  Although the transfer order from the District Court of Minnesota was given a civil docket number in the District of Massachusetts, for ease of administration, the dockets were merged and all documents were subsequently filed on the existing criminal docket.  Between 2001 and 2005, Judge Keeton addressed various motions of Ecker to determine his competency and denied his motion to dismiss the indictment.  On August 2, 2005, both the criminal and civil proceedings were reassigned to this session of the Court.  Soon thereafter, the civil docket which had been dormant and unused since July, 2001 was closed.

On March 17, 2006, this Court dismissed the indictment against Ecker and held that he would "continue to be held in custody pursuant to 18 U.S.C. § 4246 pending possible transfer to a facility in Massachusetts".  Since that time, Ecker has not been transferred to a facility in Massachusetts and has remained in federal custody at the Federal Medical Center in Springfield,

Missouri.  On September 20, 2006, Ecker filed the renewed motion
to transfer his custody.

## II.  Jurisdiction and Case Docket

The confusion surrounding this case is evident even in the
most fundamental issue before the Court: under which docket
should the pending motion be filed?  Ecker understandably filed
his motion for transfer in the criminal case, even though it was
dismissed in 2006, because it is the only docket that has been
active for the past several years.  Given that all charges
against Ecker have been dismissed, there is no longer any reason
to proceed as though this is a criminal case.  Therefore, as an
initial matter, the Court orders the civil docket for this case,
which was opened (and then closed) in July, 2001 after the case
was transferred from the District Court of Minnesota, to be
reopened.  All subsequent filings in this case shall be filed
under that docket number (01-cv-11310-NMG).

For reasons not unrelated to the first issue, the government
contends that this Court lacks jurisdiction to rule on Ecker's
motion.  It argues that because the criminal charges have been
dismissed, this Court has no jurisdiction over any matters
regarding Ecker's civil commitment.  The government contends that
18 U.S.C. § 4246(d) provides exclusive jurisdiction to the court
in which the civil commitment order was initially entered.  The

government argues that because it was the District Court of Minnesota which committed him to the custody of the Attorney General under § 4246, that court alone retains jurisdiction to decide the pending motion.  That argument is, however, based on an overly narrow construction of the statutory language that refers to the "original" court which ordered the person's commitment.

Ecker objects to the government's interpretation of the statute and contends that jurisdiction is proper in this Court pursuant to the July 20, 2001 order of Judge Magnuson transferring the case to the District of Massachusetts.  United States v. Ecker, No. 93-298 (D. Minn. July 20, 2001).  In that order, Judge Magnuson determined that "such a transfer is not only appropriate, but is necessary to further the ends of justice in this case" because, inter alia, Ecker is a resident of Massachusetts and his family resides here.  Additionally, Judge Magnuson specifically addressed the issue of Ecker's motion for discharge, stating that it was left "to the sound discretion of the United States District Court for the District of Massachusetts."  Ecker argues that it is, therefore, this Court which has jurisdiction to adjudicate the matter.

During the recent hearing on this motion, the government made countervailing arguments in support of its assertion that this Court has no jurisdiction: 1) that in July, 2001, the entire

-7-

case was not transferred to this Court and 2) even if it was, the transfer was inappropriate.

First, this Court disagrees that the case was not actually transferred. One need look no farther than the plain language of Judge Magnuson's Memorandum and Order to see that he was not transferring simply a motion but rather the entire case to this Court. In his opinion, Judge Magnuson anticipated the government's latest contention by stating:

> The commitment statutes, 18 U.S.C. § 4241 et seq., specify that a hearing to determine competency be held in the District in which Defendant was initially committed. In the normal course, the statute provides for the orderly administration of competency determinations and reviews thereof. In this case, however, unique circumstances not considered by Congress mandate that this Court relinquish jurisdiction over any ongoing competency proceedings in favor of the District of Massachusetts.

Id. It is clear, therefore, that the District of Minnesota intended to transfer the entire case to this Court. That conclusion is underscored by the court's ultimate order: "This case is TRANSFERRED to the United States District Court for the District of Massachusetts." Id. (emphasis in original).

With respect to the government's second argument, the Court declines to second-guess the clear determination of the Minnesota District Court. Although the First Circuit has not addressed the issue directly, other circuits have noted that "traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court, including

its transfer order." <u>Chrysler Credit Corp.</u> v. <u>Country Chrysler,</u>
<u>Inc.</u>, 928 F.2d 1509, 1516 (10th Cir. 1991)(citing cases); <u>see</u>
<u>also</u> 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
<u>Federal Practice and Procedure</u> § 3846 at 359 (2d ed. 1986).  In
the absence of clear error on the part of the transferring court,
this Court will not assume an appellate function and review the
appropriateness of another district court's transfer order.

Although the government relies heavily upon <u>United States</u> v.
<u>Copley</u>, 25 F.3d 660 (8th Cir. 1994), a decision from the Eighth
Circuit Court of Appeals involving a defendant who was similarly
found incompetent to stand trial, that case is inapplicable here.
While it involved a similar civil commitment in which several
district courts were involved, the Eight Circuit decided that the
transfer was improper not because the original commitment court
necessarily retained sole jurisdiction but because there was no
basis for jurisdiction in the transferee district court.  The
Eighth Circuit specifically noted that:

> [I]t could be argued from the words used in the statute that
> jurisdiction is also proper in any court that may, at the
> time proper notice is given to it that a conditionally
> released person has failed to comply with his or her
> regimen, properly exercise personal jurisdiction over the
> person.

<u>Id.</u> at 662.  The court went on to conclude that such an
interpretation would provide a basis for jurisdiction in a third
district court but not for jurisdiction in the particular
transferee district court at issue.  <u>Id.</u>  Thus, the Court

-9-

disagrees with the government's contention that the <u>Copley</u> case
supports its argument that jurisdiction is limited to the
original court in which an individual is civilly committed and
concludes that transfers are governed by the general rule that
they must be made to another district court in which the action
"might have been brought".  28 U.S.C. § 1404(a).

There is no dispute that the action in this case could have
been brought in this Court.  At the time of the transfer, Ecker
was not only a resident of but also residing in the Commonwealth
of Massachusetts.  Accordingly, the Court concludes that it has
jurisdiction to adjudicate this motion and all other subsequent
matters regarding Ecker's civil commitment.

### III. Renewed Motion to Transfer

Now pending before the Court is a renewed motion of Ecker to
order the Attorney General to transfer him to the custody of the
Commonwealth of Massachusetts in order to be located closer to
his family.  Two weeks after the government's initial objection
to the motion, it filed a supplemental memorandum in which it
reported that the Massachusetts Department of Mental Health had
denied the transfer request.  In spite of the denial, Ecker
maintains his claim and moves the Court to order the Attorney
General to persist in persuading the Commonwealth to accept his
transfer.

**A.    Statutory Requirements**

Since 1993, Ecker has been committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246.  At that time, the District Court of Minnesota adjudged that he was

> presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person [were] not available.

18 U.S.C. § 4246(a).  Neither party challenges the authority by which Ecker has been and continues to be held in federal custody. The present dispute involves the efforts of the Attorney General to cause the Commonwealth of Massachusetts to assume responsibility.

Before delving into the operative sections of the statute, the Court will first explore the guiding principles for interpreting those provisions, known generally as the Insanity Defense Reform Act of 1984, Pub. L. No. 98-473, Title II, Ch. IV, § 403, 98 Stat. 2057 (1984)(codified at 18 U.S.C. §§ 4241-4247). The Seventh Circuit Court of Appeals has identified three such guiding principles: 1) that Congress has power to provide for the custody of charged persons awaiting trial, 2) that there are limitations on that congressional power based on the "fact that the care of insane persons is essentially the function of the several states", United States v. Shawar, 865 F.2d 856, 859 (7th Cir. 1989)(citing Higgins v. United States, 205 F.2d 650, 653

-11-

(9th Cir. 1953)); accord United States v. Charters, 829 F.2d 479,
486-87 (4th Cir. 1987); United States v. Baker, 807 F.2d 1315,
1324 (6th Cir. 1986), and 3) that commitment proceedings must
comport with due process requirements.

It is the second of those three guiding principles that is
at the crux of Ecker's case.  In discussing that particular
principle, the Seventh Circuit summarized the statute's
legislative history:

> [R]esponsibility for the care of insane persons is a
> function of the states; once federal charges against a
> hospitalized defendant are dropped, [the] federal government
> does not have sufficient contacts with the person to justify
> continued hospitalization[.]

Shawar, 865 F.2d at 859 (citing S. Rep. No. 225, 98th Cong., 2d
Sess. 250, 253, reprinted in 1984 U.S.C.C.A.N. 3182, 3432, 3437).

That principle of state responsibility for the care of the
mentally ill is also clearly outlined in the text of the statute
itself.  Section 4246, the provision under which Ecker is
currently detained in federal custody, states, in no uncertain
terms, that:

> The Attorney General shall make all reasonable efforts to
> cause such a State to assume such responsibility.  If,
> notwithstanding such efforts, neither such State will assume
> such responsibility, the Attorney General shall hospitalize
> the person for treatment in a suitable facility, until—
>
> (1) such a State will assume such responsibility; or
>
> (2) the person's mental condition is such that his release,
> or his conditional release under a prescribed regimen of
> medical, psychiatric, or psychological care or treatment
> would not create a substantial risk of bodily injury to

-12-

another person or serious damage to property of another;

whichever is earlier.  The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.

18 U.S.C. § 4246(d).  The text of the statute clearly emphasizes the provisional nature of federal custody for the mentally ill; permanent arrangements must be made with the state.

It is clear to this Court that Congress did not intend for the federal government to care for the mentally ill and to provide for their long term psychiatric needs.  Both the language of the statute and the legislative history emphasize that it is the states that are best equipped to care for the mentally ill. Thus, it is imperative that federal custody pursuant to § 4246 be used as a last resort, "only in those rare circumstances where [he] has no permanent residence or there are no State authorities willing to accept him for commitment."  S. Rep. No. 225 at 250, U.S.C.C.A. at 3432.

In this case, Ecker is in jeopardy of remaining in federal custody for the rest of his life.  He has already been so held for more than 16 years, 11 of which were pursuant to the provisions of § 4246.  During those years, he has, through the efforts of his attorneys, petitioned the courts to transfer him to the Commonwealth of Massachusetts to be closer to his family. Until last year, his pending criminal charges served as a barrier to such a transfer.  Those charges were dismissed in March, 2006

and the pending motion is a renewal of those earlier requests for
transfer.

     After review of the various filings and records in this
case, the Court is distressed and dissatisfied by the lack of
effort on the part of the Attorney General to cause the
Commonwealth to assume responsibility for Ecker.  Accompanying
the government's objection to Ecker's most recent motion are
letters indicating that the Attorney General has made written
inquiries to the Massachusetts Department of Health only twice in
the past six years: once in 2000 and again, most recently, in
October, 2006.  The Court is hard-pressed to see how such minimal
efforts meet the statute's mandate to "continue periodically to
exert <u>all</u> <u>reasonable</u> <u>efforts</u> to cause such a State to assume such
responsibility".  18 U.S.C. § 4246(d)(emphasis added).

     In October, 2006, after review of the relevant materials
sent by the Bureau of Prisons, the Massachusetts Department of
Mental Health determined that there was no suitable place for
Ecker within the Commonwealth's mental health system and denied
his request for transfer.  In its memorandum opposing Ecker's
motion, the government contends that the Court must "respect that
determination" and asserts that the Bureau of Prisons has made
all reasonable efforts and has therefore complied with the
statutory requirements.  The Court rejects the government's
contention and finds that, to the contrary, all "reasonable

-14-

efforts" have not been made.

Undoubtedly, the government is correct that "[n]either this Court nor the Attorney General <u>can</u> <u>require</u> the Commonwealth of Massachusetts to assume responsibility for the care, custody and treatment of Mr. Ecker", but the statute makes clear that the Attorney General has an obligation to make serious efforts to cause the Commonwealth to do so voluntarily.  Ecker is correct when he contends that the government must do more than simply accept the Commonwealth's letter of refusal.

In determining what the government is required to do to comply with the "reasonable efforts" requirement, the Court again looks to the statute.  18 U.S.C. § 4247(i) outlines the various actions that the Attorney General is authorized to take:

> The Attorney General-
>
> (A) may contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter;
>
> (B) may apply for a civil commitment, pursuant to State law, of a person committed to his custody pursuant to section 4243 or 4246 ....

The legislative history here underscores the burden on the Attorney General to make a serious effort to cause the State to assume responsibility.  With respect to that subsection, the accompanying Senate Report states:

> It is intended that the Attorney General will make the application for State commitment unless there is clear

-15-

reason not to do so in a particular case.
S. Rep. No. 225 at 254, U.S.C.C.A.N., 3436.  To the Court's
knowledge, the Attorney General has pursued neither of those
alternatives.  Nor has the government provided the Court with an
explanation as to why such actions would not be appropriate here.

The government argues that because Massachusetts is a
signatory to the Interstate Compact on Mental Health, Mass. Gen.
Laws. ch. 123, App. § 1-1, the denial by the Massachusetts
Department of Health conclusively precludes Ecker's requested
transfer.  While the Interstate Compact relieves a state from any
obligation to receive a patient if it does not agree to accept
him, the government's position on this issue fails to recognize
that the federal statute requires the Attorney General to exert
<u>all</u> <u>reasonable</u> <u>efforts</u> to persuade and to cause the Commonwealth
to assume responsibility.

To that end, the Court will direct the government to provide
a detailed report within six months to this Court identifying all
reasonable efforts exerted to cause the Commonwealth of
Massachusetts to assume custody of Ecker.  Such efforts shall
include, but not be limited to, those identified in 18 U.S.C.
§ 4247(i), including inquiry into 1) a contractual relationship
with the Commonwealth or another private agency to provide for
the care of Ecker and 2) whether an application for civil
commitment pursuant to Mass. Gen. Laws. ch. 123, §§ 7-8 would

facilitate the progress of this case.  If the Commonwealth
continues to resist the transfer of Ecker, the government will
provide a detailed explanation of why it has not availed itself
of the alternative remedies afforded to it under 18 U.S.C.
§ 4247(i).

Although the Court is loathe to engage in such detailed
oversight of the Attorney General's efforts, the exigencies of
this case leave it with no alternative.  For more than a decade,
Ecker has remained in the custody of the federal government
pursuant to § 4246, which clearly requires the Attorney General
to make periodic attempts to cause the Commonwealth to assume
responsibility.  The Court sees no evidence of any progress and
it constitutes a severe injustice to Mr. Ecker for him to remain
in an indeterminate state of limbo.  The Court is compelled to
enforce the terms of the statute and to order the Attorney
General to pursue such efforts until the various obstacles to an
ultimate transfer have been overcome.

**B.    Appointment of a Guardian <u>ad</u> <u>Litem</u>**

At the hearing, Ecker's counsel orally requested that the
Court appoint a guardian <u>ad</u> <u>litem</u> for Ecker, arguing that the
issues regarding his care and custody involve mental health law
issues which require the attention of a guardian <u>ad</u> <u>litem</u>.  In
support of his request, Ecker asserts (and the Court agrees) that
a federal district court has the authority and the discretion to

-17-

appoint such a special representative.  <u>See</u> <u>Developmental</u>
<u>Disabilities Advocacy Ctr., Inc.</u> v. <u>Melton</u>, 689 F.2d 281, 285
(1st Cir. 1982).  Beyond its general challenge to the Court's
jurisdiction, the government has raised no specific objection to
that request.

The particular posture of this case and the fact that Ecker
is currently housed in a Bureau of Prisons facility in
Springfield, Missouri raise additional issues regarding the
appointment of a guardian <u>ad</u> <u>litem</u>.  As an initial matter, in
determining whether to appoint such a guardian, the Court must
address whether the Criminal Justice Act ("CJA"), 18 U.S.C.
§ 3006A authorizes it to compensate an additional attorney as a
guardian <u>ad</u> <u>litem</u>.  Again, the civil and criminal elements of
this case remain inextricably intertwined.

The CJA provides for the appointment of representation to
"any financially eligible person who ... [<u>inter</u> <u>alia</u>] is subject
to a mental condition hearing under chapter 313 [18 U.S.C. § 4241
<u>et</u> <u>seq.</u>] of this title."  18 U.S.C. § 3006A(a)(1).  Accordingly,
Attorney Roberto Braceras has been appointed under the CJA to
represent Ecker in these proceedings.  The issue is whether
another attorney can be so appointed.

Recently, the District Court of Alabama faced a similar
situation and held that the court was authorized to compensate an
additional attorney in another district as a guardian <u>ad</u> <u>litem</u>

-18-

for an adult defendant who had been found mentally incompetent.
See United States v. King, 473 F. Supp. 2d 1182 (M.D. Ala. 2007).
The case involved the appointment of a second attorney for
defendant Kevin L. King, who was deemed incompetent to stand
trial and held in federal custody in Missouri pursuant to 18
U.S.C. § 4241(d).  In its analysis, the Court looked to language
in both the guidelines and the statute itself.

Looking first to the Guidelines for the Administration of
the Criminal Justice Act and Related Statutes (Volume 7, Part A
of the Administrative Office of United States Courts's Guide to
Judicial Policies and Procedures), the court found that
compensation for a guardian ad litem is available.  Id. at 1183-
84.  The Guidelines provide that:

> In an extremely difficult case where the court finds it in
> the interest of justice to appoint an additional attorney,
> each attorney is eligible to receive the maximum
> compensation allowable under the Act.  The finding of the
> court that the appointment of an additional attorney in a
> difficult case was necessary and in the interest of justice
> shall appear on the Order of Appointment.

Id. (citing Guidelines § 2.11(B)).  In that case, the court was
confounded because it was "at an impasse with respect to [the
defendant's] statutory rights under 18 U.S.C. § 4241(d)."  Id. at
1184.

Likewise, the particular facts of this case make it
problematic.  The Court is unable to ascertain the nature of
Ecker's particular treatment or needs because of the nature of

-19-

his mental condition and his location in Springfield, Missouri.
At the same time, the case raises imponderable issues given the
length and indeterminancy of Ecker's custody within the federal
prison system.  The appointment of a second attorney as a
guardian ad litem located in his district is deemed to be both
beneficial to the Court and in the interest of justice.
Moreover, the statute itself authorizes compensation for
"services necessary for adequate representation".  18 U.S.C.
§ 3006A(e).  The Court concludes that the appointment of such a
special representative is necessary and advisable here.

**ORDER**

In accordance with the foregoing, the motion of Ecker to transfer custody of his person to a state facility within the Commonwealth of Massachusetts (Docket No. 196) is DENIED, without prejudice but the Court directs that:

1) all subsequent pleadings in this action shall be filed in the reopened civil case, docket number, 01-cv-11310-NMG;

2) the Attorney General shall make all reasonable efforts to cause the Commonwealth of Massachusetts to assume responsibility for the custody of Ecker, including, but not limited to, those specific actions outlined in 18 U.S.C. § 4247(i) and to report in writing to this Court not later than October 31, 2007, the particular efforts made by the Attorney General to comply with this order; and

3) Attorney Roberto Braceras, after consulting with the District of Western Missouri to determine whether there is an appropriate attorney on its CJA list to serve as a guardian <u>ad</u> <u>litem</u> for Ecker and to assist in the resolution of this case, make a recommendation to the Court for the appointment thereof.

**So ordered.**

                                         /s/ Nathaniel M. Gorton
                                         Nathaniel M. Gorton
                                         United States District Judge

Dated: April 26, 2007